### SANDERS et ux. v. LIFE INS. CO. OF VIRGINIA.

### No. 2775.

Court of Civil Appeals of Texas. El Paso. Feb. 2, 1933.

Anderson, Orr & McCord, of Fort Worth, for appellants.

Geo. T. Burgess, of Dallas, for appellee.

**328**

HIGGINS, Justice.

This is a suit by appellee against appellants, Sanders and wife, to recover upon notes executed by the latter and to foreclose a deed of trust upon land given to secure the payment of such notes.

Upon trial without a jury judgment was rendered as sought by plaintiff. The defendants appeal, complaining only of that portion of the decree awarding foreclosure of the deed of trust. In bar of the foreclosure, defendants set up the homestead character of the land. As against this defense the plaintiff pleaded estoppel.

Upon request of defendants, the court filed findings and conclusions. Those portions material to the question at issue read:

### "Findings of Fact.

"1. That prior to the first of December, 1927, the defendants, Sanders and wife, owned and occupied Lot No. Two (2) and the West one-fourth (¼) of Lot No. Three (3) in Block eight (8) of Ryan's Place, an Addition to the City of Fort Worth, Tarrant County, Texas, encumbered with a balance of $838.40 on one note for $1,000.00, dated October 25, 1922, executed by said Sanders, payable to John C. Ryan Land Company, and secured by a vendor's lien on the West one-fourth (¼) of Lot No. Three (3) in said Block, retained in the deed from said Land Company to said Sanders, of even date with said note.

"2. That taxes were due and owing to the City of Fort Worth on all of said property in the sum of $1,392.10, and to the State of Texas, County of Tarrant in the sum of $861.09, making a total of taxes due upon said property of $2,253.19.

"3. That the Investment Securities Company of Texas, a corporation, was engaged in the lending of money and had an office in Dallas, Texas, and was represented at Fort Worth by the Stewart Title Guaranty Company; that when it made a loan at Fort Worth the matter of making the loan, examining the title, of passing upon the validity thereof and the payment of the money thereunder was in the hands of the Stewart Title Guaranty Company.

"4. That sometime prior to the 5th day of December, 1927, the defendant, Sanders, approached the representative of the Investment Securities Company of Texas with reference to making a loan of $15,000.00 upon the property described in paragraph 1 hereof, which will be hereinafter referred to as the Ryan Place property, advising them that he had suffered financial reverses; that the property was too expensive for him to longer occupy as a home; that he had contracted to purchase a smaller home and desired out of the loan to pay the cash payment required to be made by him on the place he was purchasing; that he intended to abandon the Ryan Place property as his home and to move into and occupy the property which he was purchasing as his home, and he was advised that when he and his wife moved from the Ryan Place property into the other property and he and his wife abandoned the Ryan Place property as their home a loan could be made upon the Ryan Place property.

"5. That thereafter and before the 13th day of December, 1927, there was sent to and deposited with the Stewart Title Guaranty Company a deed from C. B. Barnes and wife and C. W. Buncy to R. C. Sanders, conveying Lot No. Twelve (12) in Block No. Nine (9) of Homeland Addition to the City of Fort Worth, in Tarrant County, Texas, reciting a consideration of $500.00 and certain purchase money notes, with instructions to said Stewart Title Guaranty Company to deliver said deed to the Homeland Addition lot to said Sanders upon Sanders paying to said Stewart Title Guaranty Company $400.00 of the purchase money called for in said deed, which deed remained with said Stewart Title Guaranty Company until the loan was closed.

"6. That Lot No. Twelve (12) in Block No. Nine (9) of Homeland Addition to the City of Fort Worth, Texas, is the property referred to in the evidence as the Townsend Drive property.

"7. That on the 12th day of December, 1927, Sanders and wife moved all of their furniture and household effects out of the Ryan Place property, moving the beds, cooking stove and other articles of furniture to the Townsend Drive property, and on the 13th day of December 1927, advised the said Stewart Title Guaranty Company of these facts, and on said 13th day of December, 1927, executed and delivered to said Stewart Title Guaranty Company the following affidavit signed and sworn to by said R. C. Sanders and wife, to-wit:

"Before me, the undersigned authority, a Notary Public in and for said County and State, personally appeared R. C. Sanders and wife, Carrie Gipson Sanders, who, after being by me duly sworn on oath, did each depose and say:

"Our names are R. C. Sanders and Carrie Gipson Sanders. We are husband and wife, and as such reside together in Tarrant County, Texas. We are the owners of:

"Lot 12, Block 9 of Homeland Addition to the City of Fort Worth, Tarrant County, Texas, the same being known as lot numbered 3567 Townsend Drive in Fort Worth, Texas, upon which said property we now reside, and which we now own, occupy, use and claim as our homestead property or place of actual residence.

"We further state that we are also the owners of:

"Lot 2 and the West one-fourth of Lot 3 Block 8 of Ryan Place Addition to the City of Fort Worth, in Tarrant County, Texas.

"We here now state that we do not reside, occupy, use or claim said last above described property as our homestead property. We further state that we have heretofore removed therefrom all our furniture, household goods and personal effects of whatsoever description; and that we now have and hold no manner of homestead claim against said last above described property.

"We make this affidavit as an inducement to Investment Securities Company of Texas, a corporation, to extend to us a loan upon the security of said Lot 2 and the West ¼ of Lot 3, in Block 8, Ryan Place Addition—upon the security of our two certain deeds of trust of even date herewith to T. P. Junkin, Trustee, recorded in the deeds of trust of even date herewith to T. P. Junkin, Trustee, recorded in the Deed of Trust Records of Tarrant County, Texas.

"Executed this the 5th day of December, 1927..

"[Signed]  R. C. Sanders,
"[Signed]  Carrie Gipson Sanders.

"Subscribed and sworn to before me, this the, 13th day of December, A. D. 1927.

"Mary Deane Melton,
"[Seal]  Notary Public, Tarrant County, Tex.'

"8. That on the same date, December 13, 1927, said Sanders and wife executed their certain promissory note for $15,000.00, payable to the Investment Securities Company of Texas, and a deed of trust upon the Ryan Place property, being the note and deed of trust sued upon herein, all of said papers being dated December 5, 1927, but actually signed, executed and acknowledged on the 13th day of December, 1927, which deed of trust was properly acknowledged by R. C. Sanders and wife, Carrie Gipson Sanders.

"9. That on the 13th day of December, 1927, the said Sanders and his agents advised the Stewart Title Guaranty Company that they had moved all of their household goods and personal effects from the Ryan Place property and were residing on Lot 12, Block 9, of Homeland Addition and no longer claimed any homestead interest in the Ryan Place property.

"10. That the Ryan Place property is known in the evidence as the Elizabeth Boulevard property.

"11. That on the 13th day of December, 1927, the said R. C. Sanders did deliver to the Stewart Title Guaranty Company a letter reading as follows:

" 'This letter will be your authority to pay to Roy R. Nanny the sum of $400.00 out of the proceeds of my loan with you of $15,-000.00, he having advanced to me this amount to purchase other property.

" '[Signed]  R. C. Sanders.'

"12. That the Stewart Title Guaranty Company relying upon the statements and representations of said Sanders and wife, and the affidavit set out above, did accept said note and deed of trust and pay over to and for said Sanders the full amount thereof, to-wit, $15,000.00, paying to the Ryan Land Company the sum of $838.40, being the balance due upon the vendor's lien note owing on the West one-fourth (¼) of Lot Three (3) in Block No. Eight (8) of Ryan Place, and paying $861.09 to the County Tax Collector of Tarrant County for the taxes due the State and County, and $1,392.10 to the City of Fort Worth for the taxes due the City, and $400.00 of the purchase money for the Homeland Addition lot and some other items of expense requested by Sanders to be paid, and giving to said Sanders the balance of $10,808.16.

"13. That the said Sanders and wife, by their conduct and representations, led the Investment Securities Company of Texas and its agents to believe that they had abandoned Lot No. Two (2) and the West one-fourth (¼) of Lot No. Three (3) in Block No. Eight (8) of Ryan Place Addition as their homestead, and were setting up their homestead on Lot No. Twelve (12) in Block No. Nine (9) of Homeland Addition, upon which acts and conduct the Investment Securities Company of Texas relied and so relying and believing same to be true, paid out the full amount of money evidenced by said note.

"14. That by the acts, conduct and representations of the said Sanders and wife they have estopped themselves to now claim any homestead interest in Lot No. Two (2) and the West one-fourth (¼) of Lot Three (3) in Block No. eight (8) of Ryan Place Addition as against the lien of said deed of trust sought to be foreclosed herein and have estopped themselves to set up any invalidity of the lien of said deed of trust.

"15. That thereafter, for value, before maturity of the note and in due course of trade, the Investment Securities Company of Texas sold said note and liens securing same to the plaintiff."

"Conclusions of Law.

"From the foregoing facts I make the following conclusions of law:

"1. That the defendants, Sanders and wife, by their acts and conduct, and the reliance thereon by the Investment Securities Company of Texas, have estopped themselves from setting up any homestead interest in Lot No. Two (2) and the West one-fourth (¼) of Lot No. Three (3) in Block No. eight (8) of Ryan Place Addition to the City of Dallas, Texas, as against the lien of the deed of trust executed by them for the benefit of the Investment Securities Company of Texas and now sought to be foreclosed herein by the plaintiff."

■■■ It is one of the husband's rights, as head of the family, to designate the homestead; and his acts in so doing are not subject to question so long as he does not act

in fraud of the wife's homestead rights. Hanes v. Hanes (Tex. Com. App.) 239 S. W. 190.

■ It is well settled that, where the facts respecting two places are such that the homestead character will attach to either to the exclusion of the other, according as the husband and wife intend, a declaration by the spouses of their intention in this respect will estop them from disputing the truth of the declaration as against one who acquires a deed of trust in reliance upon such declaration. Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209; Carstens v. Landrum (Tex. Com. App.) 17 S.W.(2d) 803; Dallas B. & L. Ass'n v. Patterson (Tex. Civ. App.) 48 S.W.(2d) 657; First Texas J. L. Bank v. Chapman (Tex. Civ. App.) 48 S.W.(2d) 651; Purdy v. Grove (Tex.Civ. App.) 35 S.W.(2d) 1078, 1079; Glaser v. Henderson (Tex. Civ. App.) 2 S.W.(2d) 987; Wootton v. Jones (Tex. Civ. App.) 286 S. W. 680.

■ Appellees do not question such to be the rule of law, but they question the sufficiency of the evidence to bring this case within its purview.

We copy excerpts from the testimony as given in brief of appellee.

"The appellant, R. C. Sanders, testified:

"The house is a large brick house. Taxes on it were high—about $900.00 a year. It took some money to live in the place. * * *

"Q. And didn't you say to him (Foster) that you were—either had a sale for the property or you were going to sell it and you wanted this to get you a smaller home; that you had arranged to buy a smaller home and that you wanted this property to probably pay the cash payment on the smaller home?

"A. Not in those exact words. I told Foster that I was buying another home somewhere else and out of this loan I wanted to make the cash payment on that home and that I was moving out of the Elizabeth Boulevard property and moving in the Homeland Addition lot and was going to make that my home. When the loan was closed I got $400.00 to pay on the Homeland lot. We moved practically all of the furniture out of the Elizabeth Boulevard property and a great deal of it to the Homeland Addition property. The papers were signed on the 13th of December, 1927. That he and Mrs. Sanders signed the affidavit as to homestead on the 13th of December, 1927, and swore to the same. That the facts stated in the affidavit were true."

"Mrs. Sanders testified:

"That the furniture left the house on the 12th of December and was moved back on the afternoon of the 14th; that she moved to the Homeland property the beds, kitchen table, kitchen range, chairs and mattresses. That if anyone had come out to the place on the 12th or 13th of December it would have been apparent that they (the Sanders) were moving out of the property. That all the beds and the range were moved to the Homeland lot. That all of the heavy furniture and beds were moved before Foster came out to the house; that there was a breakfast room suite in the basement. That their acts in moving the furniture out and in hiding some of it in the basement was to give the impression that they were moving away from the Elizabeth Boulevard place, and that their moving the furniture over on the Townsend Drive (the Homeland) lot was to give the impression that they were moving into that place. I did not tell Mr. Foster that I was going to move back in the Elizabeth Boulevard property. I never saw Mr. Heath or Mr. Criddle. I was never in the office of the Stewart Title Guaranty Company. I signed all the papers so that Mr. Sanders could get the money on them."

"J. T. Mackey testified:

"That he was connected with the Investment Securities Company in 1927 and lived in Dallas. That when the Company made a loan at Fort Worth the matter was turned over to the Stewart Title Guaranty Company and the examination of the title and closing of the loan was up to it and they paid out the money when they were satisfied as to the title."

"A. C. Heath testified:

"That he was a member of the bar in Tarrant County, living at Fort Worth, in 1927, and connected with the Stewart Title Guaranty Company. That he partly handled the Sanders loan; that at its inception Mr. Sanders and a Mr. Nanny came in to his office and Sanders told him he was purchasing another home and wanted to borrow on the Elizabeth Boulevard property, out of which he wanted to pay the cash payment on the property he was buying. Sanders said he would move out of the Elizabeth Boulevard property; that it was too large for him; that he had to keep a yard man and two servants and it was too expensive; that he told Sanders he could mortgage the Elizabeth Boulevard property if the transaction was bona fide and he was buying the other property and moving into it; that Sanders said that was what he proposed to do; that he went out and looked at the Boulevard property and found practically everything out of the property, except a little yellow table and chair in one room; that he was not able to get into the house but could see through the windows; that thereafter Sanders came in to see him; that the deed to the Homeland lot which Sanders was buying was sent to him with instructions to deliver the deed to Sanders when the loan was closed and the money ready to distribute and there also came a letter from Mr. Sanders to pay the $400.00 on account of the purchase of the Homeland lot out of the loan. That he saw Sanders the second time after he (Heath) had visited

the Boulevard house and told Sanders that the shades were up and that there was a table and some chairs in there; that Sanders told him that it was impracticable to remove the shades as they were especially cut for the windows in that house and to use them elsewhere would be too expensive and he thought it was immaterial. That he would move the table and chairs and then assure them by affidavit of himself and wife that the things had been moved; that the loan was then handled by John Criddle and closed by him; that he afterwards learned that all the things were out and he prepared the affidavit for Sanders and wife to sign. I know Sanders said he had moved out there at the other place. I believed and relied upon the statements and representations made by Mr. Sanders and thought they were true and would not have permitted the money to be paid out otherwise."

"J. E. Foster, Jr., testified:

"That he and his father were in the loan business at Fort Worth in 1927; that a Mr. Nanny came to him and told him that a Mr. Sanders desired to borrow $15,000.00 on property owned by Sanders on Elizabeth Boulevard; that Nanny was in no way connected with his firm; that he looked at the house from the outside and thereafter Mr. Sanders came into his office and talked to him and his father and said he wanted to borrow $15,-000.00 on the Elizabeth Boulevard property; that he had entered into a contract to purchase another piece of property into which he was to move; that the property was on Townsend Drive in Homeland Addition; that his business was poor and he didn't have sufficient income to justify his living in the Elizabeth Boulevard property and he was buying the smaller property for his home and would dispose of the Elizabeth Boulevard property; that he was going to move into the Townsend Drive property and wanted the loan on the Elizabeth Boulevard property so as to make a cash payment on the Townsend Drive property. That the deed to the Townsend Drive property was left with the Stewart Title Guaranty Company to be delivered to Sanders when the loan was closed and the purchase money deducted. That before the papers were signed or the money paid out, he, with Mr. Nanny, visited the Elizabeth Boulevard property and found all the furniture moved out. That the garage was open; that there was no indication of anything in the garage; that he never saw the negro girl around the place; that all the heavy draperies and curtains on the windows and pictures and furniture was out of the house; that he believed from the appearance of the Elizabeth Boulevard property that the statements Sanders had made to him were true. That on the 13th of December, Sanders and wife came into his office; that he read and explained the deed of trust and affidavit to them and they signed and acknowledged it.

That he believed the representations and statements of Sanders and wife were true and that the next day, the 14th of December, the money was paid out. That after the papers were signed and acknowledged they were turned over to the Stewart Title Guaranty Company. That he had no reason to say that either Mr. or Mrs. Sanders was not telling him the truth and not acting in good faith and that he believed the acts and statements of Sanders and wife were true. I didn't know that Sanders and wife were staying at the hotel down town. I was informed by Mr. Sanders that he was moving to this place and was going to make the Townsend Drive property his abode."

"J. E. Foster, Sr., testified:

"That he and his son were in the loan business in Fort Worth in 1927; that Mr. Nanny first mentioned the loan to him. Mr. Sanders came into his office after that and said that the Elizabeth Boulevard property was too large for him and was too expensive and that he was buying, or had bought another place and was going to move to a smaller place. That Sanders said the Elizabeth Boulevard property was too expensive for him to live in as it took two servants and a yard man and that by living in a smaller house the expense would be eliminated and that he wasn't able to live in a house that expensive."

"John Criddle testified:

"That he was in the employ of the Stewart Title Guaranty Company and his duty was to close loans. That on the 14th of December, in the morning, the deed of trust, affidavit and note were brought to him and then Mr. Sanders came in and he checked over the papers, saw that they were properly signed and acknowledged; that he had some instructions from Mr. Heath, saw that the affidavit and papers were in form, and believing the statements to be true, delivered the deed for the Homeland property to Mr. Sanders and disbursed the money by paying $400.00 toward the purchase of the Homeland property, paying the taxes on the Elizabeth Boulevard property and giving the difference to Mr. Sanders. That before he paid out the money Foster advised him that the stuff had been moved out of the house."

"R. C. Nanny testified:

"That he was a loan broker in Fort Worth in 1927, working for himself under the name of Roy Nanny Company; that he inspected the Elizabeth Boulevard property before the loan was closed with Foster; that there was nothing in the house. That he went in all the rooms but did not go into the basement; that there was no furniture in any of the rooms; that Mr. and Mrs. Sanders told him they had moved a part of the furniture over on Townsend Drive in a house they bought and they were storing a part with Binyon-O'Keefe. That Sanders and wife told him

they were going to make the Townsend Drive property their home."

Appellee offered in evidence a deed from C. B. Barnes et al. to R. C. Sanders, for Lot No. 12 in Block 9, of Homeland Addition to the City of Fort Worth, Tarrant County, Tex., dated —————— day of December, 1927, and filed for record December 15, 1927.

Sanders testified on rebuttal that: "Mrs. Johnson took Mrs. Sanders acknowledgment and read the deed of trust and instruments to Mrs. Sanders. That he moved the furniture back in the house after he got the money and waited until then."

This testimony discloses a state of facts very similar to those presented in Carstens v. Landrum, supra, and in our opinion clearly supports the finding and conclusion of the trial court upon the issue of estoppel.

The judgment is therefore affirmed.