## LIFE INS. CO. OF VIRGINIA v. WEATHERFORD et al.

### No. 1121.

Court of Civil Appeals of Texas. Eastland.

May 12, 1933.

Rehearing Denied June 9, 1933.

Renfro, Ledbetter & McCombs, of Dallas, and Davidson, Doss & McMahon, of Abilene, for appellant.

Cox & Hayden, of Abilene, for appellees.

HICKMAN, Chief Justice.

Appellant recovered judgment against appellee P. R. Weatherford in the court below for $19,122.40, with a foreclosure of a deed of trust lien on 482.3 acres of land in Crosby county. Foreclosure was sought upon 200 additional acres of the same tract, but was denied upon appellee's claim of homestead therein, and the plaintiff below has appealed. The notes and lien were originally given to Southern Mortgage Company of Abilene, but were later negotiated and transferred to appellant. The wife of appellee Weatherford having died intestate without administration on her estate after the execution of the deed of trust, and before the institution of the suit, her only child, Mrs. Scott McConnell, was made a party. Other persons and corporations not necessary here to mention were also made parties in order to subordinate their respective liens and claims to the claim of appellant. None of the defendants except P. R. Weatherford, who will be herein referred to as appellee, answered. In his answer, by a special plea, the claim was made that a certain 200-acre tract out of the larger tract covered by the deed of trust was the homestead of himself and wife at the time the deed of trust was executed, and that, by reason hereof, the lien on the 200 acres so claimed as a homestead was invalid. By supplemental petition appellant pleaded, among other defenses to appellee's claim of homestead, a series of representations, acts, and conduct on the part of appellee and his wife as the basis of an estoppel against the homestead plea. We shall not here detail this pleading of estoppel, but it is sufficient to state that it pleaded well the facts hereafter disclosed and set up same as an estoppel against the homestead claim.

No questions are presented as to the correctness of any portion of the judgment except that relating to the homestead question. The first assignment of error calls in question the correctness of the trial court's action in refusing to give in charge to the jury appellant's request for a peremptory instruction in its favor. The material facts are practically undisputed and are as follows: Appellee resided in the city of Fort Worth from

1907 until late in the year of 1923, during which time he was engaged in the real estate business. He was the owner of the Weatherford subdivision, situated in the vicinity of Texas Christian University. In the fall of 1923 he acquired a furnished hotel in Belton, Bell county, and, with his wife, moved into it. According to his testimony he was affected with asthma in Fort Worth and hoped to better his health by the move to Belton. After living in Belton for a little more than one year he traded for the Crosby county land covered by the deed of trust in suit. This was a well-improved tract of 682.3 acres on which were situated tenant houses and a large furnished residence, into which he and his wife moved in January, 1925. In the exchange he acquired the furniture in this residence. He made repeated unsuccessful efforts to dispose of the Crosby county property. In answer to an interrogatory inquiring whether he tried to get rid of the property before he negotiated the loan in question, he testified: "When I bought that, before I signed the contract for the property I told him I did not want to keep it; I was buying that to get health, where I could get my breath. I said I did not want to keep the property. I wanted to dispose of it."

In 1918 he acquired a residence in Fort Worth, in what is known as Turner's subdivision of Beacon Hill addition to the city of Fort Worth, valued at approximately $12,000. He, with his wife and the McConnells (the latter being appellee's married daughter and her husband), moved into this property and continued to live there as a home until appellee and his wife moved to Belton in the fall of 1923, after which time the McConnells continued to live there for several years. While appellee lived in Fort Worth his post office address was Box 119. He did not move any of his furniture from his Fort Worth home when he left there, and same was still in that home at the time the loan in question was negotiated. He carried fire insurance thereon in his own name and paid the premiums. There is no evidence of any written declaration made by him or his wife of their intention to abandon the Fort Worth property as their homestead until several years after the loan in question was consummated.

On January 19, 1926, after appellee, with his wife, had been residing on the Crosby county land for one year, he made written application to Southern Mortgage Company of Abilene, Tex., for a loan of $16,000 on the Crosby county land of 682.3 acres. In that application he stated that the land was occupied by L. S. McEntire, Bart Stokes, and F. E. Weatherford as tenants. This information was contained in the application:

"Is any part of this property your homestead? No.

"Was it ever your homestead? No.

"If so, why did you abandon it as such? ———

"Do you intend to make it or any part thereof your homestead? No.

"Give full description of your homestead. Lots 1 and 28 and N. ½ of 2 and 27 in Block 3 of Turner's Subdivision of Beacon Hill Addition to the city of Fort Worth. I own my homestead above described, worth $12,500.00 on which I owe $5,000.00 and * * *" (Here follows description of other property owned by him.)

In answer to an inquiry as to his post office address, he gave the information that same was Box 119, Fort Worth. The application contained this warning: "Make no representations which you cannot substantiate fully, as you will observe you are under oath." It was subscribed and sworn to before J. J. Taylor, a notary public of Crosby county. On January 29, 1926, appellee and his wife each executed, acknowledged, and swore to a homestead designation, in which they recited that their homestead consisted of the Fort Worth property above described.

In this designation will be found this statement: "We further solemnly swear that the above representations are made for the special purpose of obtaining a loan of $16,000.00 from the Southern Mortgage Company of Abilene, Texas, a corporation, on the property last above described and said representations are made with the expectation that said Southern Mortgage Company shall rely upon same in making said loan, and said representations are made for the purpose of obtaining said loan and as an inducement to said Southern Mortgage Company to make said loan."

On the same day appellee tendered to the mortgage company three instruments each designated as "Tenant's Declaration of Interest." These instruments were executed and acknowledged respectively by S. L. McEntire, Bart Stokes, and F. E. Weatherford, and together and collectively contained the information that the signers were the tenants of appellee, working this land, of which appellee was recognized as the true owner. F. E. Weatherford was appellee's brother and lived in the same house with him.

On the same day appellee and his wife executed to Henry James, trustee for the mortgage company, a deed of trust upon the 682.3-acre tract in Crosby county, including the land now claimed by appellee as a homestead, and also executed the promissory notes sued on, in consideration for which they were paid $16,000 in cash by the mortgage company.

A few years later appellee increased the loan upon his Fort Worth property, and, for the purpose of securing that loan, designated the Crosby county property as his homestead.

There were introduced in evidence certain letters written by appellee to the assignor of appellant after the loan was consummated. One of these letters was written from Fort Worth and the others from Crosbyton. After appellee's signature to each of these letters he appended the following: "P. O. Box 119, Fort Worth, Texas." Much evidence was offered as to appellee's visits to Fort Worth and as to many incidental matters with reference to the character of occupancy of the respective properties after the execution of the loan; but, as we view the controlling law question, these matters are relatively unimportant, as the rights of the parties must be determined by the facts as they existed when the deed of trust was executed.

■ The first inquiry is: Could it be said, as a matter of law, that at the time of the execution of the deed of trust and the procuring of the loan, appellee had abandoned his Fort Worth homestead? As is said by Mr. Nunn in his text on The Texas Homestead: "There is no matter connected with the homestead that is more difficult of a proper solution than that of the question of abandonment. * * * The rule, early announced and now unanimously accepted, is: (a) that there must be an intent on the part of the head of the family to permanently abandon and cease to use the property for homestead purposes; (b) and that such intent must be actually executed, and the property abandoned for homestead purposes in accordance therewith. The intent here contemplated is a present, definite and permanent intent to cease to use the property for homestead purposes, as distinguished from an indefinite, uncertain or conditional intent to so abandon the use of the property for such purpose." Nunn on Exemptions, § 4, pp. 159, 160.

The text is well supported by the cases cited therein, among which are Shepherd v. Cassiday, 20 Tex. 24, 70 Am. Dec. 372, and Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 177.

In the recent case of Blanks v. First National Bank of Seymour, 44 S.W.(2d) 393 (error refused), we considered the question of when it could be held as a matter of law that a homestead had been abandoned, and, upon a state of facts very much stronger on the question of abandonment than those presented here, we held that an issue of fact was presented as to whether the original homestead right had been abandoned by the acquisition of other property suited for homestead purposes and used and occupied as such. Some of the leading authorities will be found in that opinion. With those authorities in mind, we experience no difficulty in arriving at the conclusion that appellee might have successfully established the fact that his Fort Worth property was his homestead on the day he executed the deed of trust in question, had he testified that it had never been his intention to abandon that property as a homestead. Viewing the situation from the standpoint of the mortgage company on the day the lien was executed, there was no possible way for it to determine, as a matter of law, which piece of property was appellee's homestead. The answer to the query under the undisputed physical facts depended solely and alone upon appellee's intention. No one could know that intention except appellee himself. Had a writ of attachment been levied on his Fort Worth property on the day this mortgage was executed, undoubtedly appellee could have successfully resisted its foreclosure by offering in evidence the same facts found in this record, with this addition only: That he never intended to abandon his homestead in Fort Worth, but left there on account of his health, with the intention some day in the future to return thereto and make it his home. We decided this exact question in the case of First National Bank in Stamford v. Jones, 59 S.W.(2d) 1103, in an opinion released May 5, 1933.

■ Appellee had the right and privilege to select either of these pieces of property as his homestead. Appellant had no way of determining as a matter of law which one of them was his homestead. With that situation existing appellee in a most solemn form, under oath and in writing, declared that intention for the purpose of procuring $16,000 in cash, and on the faith of that declaration of fact, of which he alone was cognizant, actually procured a loan of that amount. This case is governed by the general rule that, where the facts respecting two places are such that the homestead character will attach to either to the exclusion of the other, according to the husband's intention, and the husband makes a declaration of that intention, causing another to act thereon, he will be estopped later to declare a contrary intention. Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209, 211; Carstens v. Landrum (Tex. Com. App.) 17 S.W.(2d) 803; Purdy v. Grove (Tex. Civ. App.) 35 S.W.(2d) 1078 (error refused); First Texas Joint Stock Land Bank v. Chapman (Tex. Civ. App.) 48 S.W.(2d) 651; Dallas Bldg. & Loan Ass'n v. Patterson (Tex. Civ. App.) 48 S.W.(2d) 657; Sanders v. Life Ins. Co. of Virginia (Tex. Civ. App.) 57 S.W. (2d) 327.

■ In the cases of Carstens v. Landrum, Purdy v. Grove, and Sanders v. Insurance Co., supra, the borrowers were estopped by representations that they had abandoned their former homesteads. For the same reason appellee should be estopped in the instant case by the representation that he had not abandoned his former homestead.

The leading case of Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12, relied on by appellee, is clearly distinguishable from the case here presented. That distinction is

pointed out by Justice Williams in the case of Parrish v. Hawes, supra, in this language: "They represented that it was not their homestead, but that other land was, which they did not then and *had never resided upon or used as a home.*" (Italics ours.)

We believe that the court should have given appellant's requested peremptory instruction. There were no material fact issues to be submitted. It is accordingly our order that the judgment of the trial court, in so far as it concerns the money judgment against appellee, together with a foreclosure on the excess, be not disturbed, but that the portion of the judgment denying a foreclosure of the lien upon the 200 acres claimed as a homestead be reversed and here rendered in favor of appellant.