NO. 07-04-0064-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



OCTOBER 24, 2005



______________________________




ROY S. RODRIGUEZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;



NO. CR-O3K-174; HONORABLE ROLAND SAUL, JUDGE



_______________________________



Before REAVIS and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Following a plea of not guilty, appellant Roy S. Rodriguez was convicted by a jury
of possession with intent to deliver cocaine in the amount of four or more grams but less
than 200 and sentenced to 18 years confinement and a $5,000 fine and possession of
marihuana in the amount of four ounces but less than five pounds and received a two year
suspended sentence. (1) Presenting three issues, appellant asserts trial court error in (1)
denying his request for an article 38.23 jury instruction on the basis there was no factual
dispute on how the contraband was obtained; (2) admitting into evidence in violation of
federal and Texas law his oral statement claiming ownership of the cocaine because it was
involuntarily given; and (3) holding that his unrecorded oral statement claiming ownership
of the cocaine was not the product of interrogation. We affirm.

 Based on a tip from a confidential informant that cocaine was in appellant's
residence, officers obtained and executed a search warrant. Upon gaining entry, officers
located appellant in a bathroom, handcuffed him, and escorted him to the living room. His
common law wife and four young children were also present and were directed to remain
in the living room until the premises were secured. Miranda (2) warnings were administered
to both adults. 

 Officer Murray Hazlett asked appellant if there was anything he wished to tell him,
and he admitted being in possession of a substantial quantity of marihuana. He led an
officer to its location in a bedroom closet. A thorough search of the residence resulted in
a large quantity of cocaine being found in a canister with a false bottom that was on the
kitchen table. Officer Hazlett remarked generally, "[w]hat's this?" Appellant claimed he
had no knowledge of the cocaine. A few minutes later appellant overheard two officers
discussing whether to also arrest his wife due to the quantity of narcotics found. He then
admitted ownership of the cocaine. Considering the quantity of narcotics found and other
paraphernalia, appellant was charged in a two count indictment with possession with intent
to deliver cocaine of four grams or more but less than 200 and possession of marihuana
of five pounds or less but more than four ounces. 

 By his first issue, appellant maintains the trial court erred in denying his request for
an instruction under article 38.23(a) of the Texas Code of Criminal Procedure Annotated
(Vernon 2005), because the evidence raised a fact issue on whether the cocaine was
legally obtained. We disagree. Article 38.23(a) provides that an instruction to disregard
evidence be included in the charge if the legal evidence raises a factual dispute on how
the evidence was obtained. Following a hearing on appellant's bill of exception at which
he submitted a proposed charge containing an article 38.23(a) instruction, the trial court
ruled there was no factual dispute regarding the way the evidence was obtained and
denied the request for the instruction.

 Appellant asserts he was entitled to an article 38.23(a) instruction because the facts
alleged to support the probable cause affidavit were controverted. He also contends
testimony presented by him and his wife raised a factual dispute on whether the cocaine
was legally seized. 

 The State contends the evidence was obtained pursuant to a valid search warrant
based upon probable cause provided by a confidential informant. The confidential
informant told officers he personally observed cocaine in appellant's possession at
appellant's residence within the 72-hour period preceding execution of the warrant. The
State also asserts that denial of possession of contraband by a defendant does not raise
a factual dispute on how evidence was obtained. If so, the State argues, an article
38.23(a) instruction would be mandatory in every case where a defendant denied
possession of contraband.

 Appellant initially denied knowledge of the cocaine. He explained that a friend had
visited the weekend before the arrest and had been using cocaine in his home. He
claimed he had never seen the canister containing approximately $8,000 in cocaine and
believed it must have been left there by his friend. Denial of possession by a defendant
does not create a fact issue that obliges the trial court to submit an article 38.23(a)
instruction. See generally Mitchell v. State, 645 S.W.2d 295, 297 n.2 (Tex.Cr.App. 1983)
(explaining that Jordan v. State, 562 S.W.2d 472, 473 (Tex.Cr.App. 1978), which involved
denial of information by an informant which the court concluded raised a fact issue on the
validity of a pat down search, does not teach that denial by an accused of possession of
a controlled substance raises a fact issue regarding the legality of a search).

 Appellant also argues that his wife's testimony created a factual dispute. She
testified she had never seen appellant in possession of cocaine and denied that the
cocaine belonged to him. However, the evidence established that appellant and his wife
had been separated for two weeks prior to the arrest and she and the children had been
living elsewhere. She was at the residence on the day the warrant was executed to pick
up her children and although she and appellant had reconciled, she had not moved back
in. Her testimony was, therefore, insufficient to raise a fact issue regarding the probable
cause affidavit in support of the search warrant. There being no factual dispute on the
legality of the search and seizure of cocaine, the trial court did not err in denying
appellant's request for an article 38.23(a) instruction. Issue one is overruled.

 By his second and third issues, appellant contends the trial court erred in admitting
into evidence his oral confession claiming ownership of the cocaine because it was
involuntary under federal and Texas law and was the product of custodial interrogation, 
which required that it be electronically recorded. Tex. Code Crim. Proc. Ann. art. 38.22,
§ 3(a)(1) (Vernon 2005). Because both contentions stem from a controversy on whether
appellant was induced into admitting ownership of the cocaine in exchange for his wife's
release, we will consider them simultaneously.

 A confession is admissible only if voluntarily given. Jackson v. Denno, 378 U.S.
368, 385-86, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). It must be free and voluntary and it
must not be extracted by any sort of threats or violence, nor obtained by any direct or
implied promises, however slight, nor by exertion of any improper influence. Malloy v.
Hogan, 378 U.S. 1, 7, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). A threat made by law
enforcement to arrest or punish a close relative or a promise to free a relative of a suspect
in exchange for a confession may render the suspect's confession inadmissible. Roberts
v. State, 545 S.W.2d 157, 161 (Tex.Cr.App. 1977). However, where no express or implied
promise or threat is made by law enforcement, a suspect's belief that his cooperation will
benefit a relative will not render a confession inadmissible. Id.

 A trial court's ruling on admission of evidence is reviewed for abuse of discretion. 
Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Cr.App. 2000). The standard is the same
for a trial court's ruling on a motion to suppress. Oles v. State, 993 S.W.2d 103, 106
(Tex.Cr.App. 1999). We apply a bifurcated standard of review giving almost total
deference to the court's determination of historical facts and reviewing de novo its
application of the law to those facts. Laney v. State, 117 S.W.3d 854, 857 (Tex.Cr.App.
2003); State v. Ross, 32 S.W.3d 853, 856 (Tex.Cr.App. 2000); see also Guzman v. State,
955 S.W.2d 85, 89 (Tex.Cr.App. 1997). The evidence should be viewed in the light most
favorable to the court's ruling. Armendariz v. State, 123 S.W.3d 401, 402 (Tex.Cr.App.
2003), cert. denied, 541 U.S. 974, 124 S.Ct. 1883, 158 L.Ed.2d 469 (2004); State v.
Ballard, 987 S.W.2d 889, 891 (Tex.Cr.App. 1999). In a suppression hearing the trial court
is the sole judge of the credibility of the witnesses and the weight to be given their
testimony. Ross, 32 S.W.3d at 855. 

 At a hearing on appellant's motion to suppress, Officer Hazlett testified that after the
cocaine was discovered in the kitchen, he and one of his deputies discussed whether to
arrest both adults in the home due to the quantity of cocaine. According to Hazlett,
appellant, who was in the living room on the other side of a partition or bar, must have
overheard them and, within minutes, asserted his wife "didn't know anything about this"
and admitted ownership of the cocaine. Although appellant testified he had overheard the
officers discussing whom to arrest, he testified, contrary to Hazlett, that he was induced
into admitting ownership of the cocaine to secure his wife's release. Appellant's wife
testified she could not remember if an officer asked appellant "what's this," but likewise
maintained appellant confessed in exchange for her release.

 Appellant maintains his trial testimony demonstrating that his confession was
induced by a promise of leniency for his wife was not challenged by the State on cross-examination. However, during the State's case-in-chief, Officer Hazlett testified that
appellant overheard officers discussing whom to arrest and spontaneously admitted
ownership of the cocaine and claimed his wife didn't know anything.

 We acknowledge that uncontroverted testimony of an accused that a confession
was obtained in a coercive manner renders it inadmissible as a matter of law. Sinegal v.
State, 582 S.W.2d 135, 137 (Tex.Cr.App. 1999). The evidence on the voluntariness of
appellant's confession, however, was controverted. As trier of fact, the trial court was the
exclusive judge of the credibility of the witnesses and the weight to be afforded their
testimony in determining the voluntariness of appellant's confession. Burks v. State, 583
S.W.2d 389, 393 (Tex.Cr.App. 1979). The trial court had the duty and responsibility to
resolve the controverted facts and did so favorably to the State. Moore v. State, 700
S.W.2d 193, 202-03 (Tex.Cr.App. 1985), cert. denied, 474 U.S. 1113, 106 S.Ct. 1167, 89
L.Ed.2d 289 (1986). 

 We do not overlook appellant's reliance on Tovar v. State, 709 S.W.2d 25
(Tex.App.-Corpus Christi 1986, no pet.), to support his argument that his confession was
induced. However, it is distinguishable. In Tovar, the defendant's confession was held
inadmissible because it was obtained by a promise of leniency for his pregnant wife. Id.
at 29. The investigator affirmatively testified on cross-examination that Tovar was induced
into confessing to possession of marihuana that had been seized from a car owned by his
wife so charges would not be filed on her. Id. at 28. 

 In the underlying case, there is no evidence of a direct or implied promise, improper
influence, or threat by any officers. Although appellant and his wife testified that appellant
was induced into confessing, he also testified that when he overheard officers ask "what's
this" upon finding the cocaine, he indicated "[t]hey weren't saying it loud, like, to me or
anything. . . . They weren't really asking me anything." Officer Hazlett testified that
appellant must have overheard officers discussing whether to arrest both adults and a few
minutes later confessed. We conclude the trial court's ruling that appellant's confession
was admissible because it was voluntary and was not an abuse of discretion. Issue two
is overruled.

 Appellant contends his oral confession was the result of interrogation while in
custody and should have been electronically recorded as required by article 38.22, section
3(a)(1) of the Texas Code of Criminal Procedure. We disagree. Article 38.22 generally
precludes the use of statements that result from custodial interrogation, absent compliance
with procedural safeguards. Shiflet v. State, 732 S.W.2d 622, 623 (Tex.Cr.App. 1985). 
Section 3(a)(1) prohibits admission of an oral statement unless an electronic recording is
made. However, section 5 specifically exempts statements that do not stem from custodial
interrogation or that are voluntary. The State concedes that appellant was in custody. 
Thus, the decisive question is whether appellant's oral confession was the result of
interrogation.

 Interrogation refers not only to express questioning, but also to words or actions of
police officers that they should know are reasonably likely to elicit an incriminating
response from a suspect. Rhode Island v. Innis, 446 U.S. 291, 299-302, 100 S.Ct. 1682,
64 L.Ed.2d 297 (1980). See also Morris v. State, 897 S.W.2d 528, 531 (Tex.App.-El Paso
1995, no pet.). As conceptualized in Miranda, interrogation must reflect a measure of
compulsion above and beyond that inherent in custody itself. Innis, 446 U.S. at 300. 
When a suspect in custody spontaneously volunteers information that is not in response
to interrogation by officers, the statement is admissible even though not recorded because
it is not the product of custodial interrogation. Stevens v. State, 671 S.W.2d 517, 520
(Tex.Cr.App. 1984).

 As analyzed above, appellant, who was in the living room, spontaneously claimed 
ownership of the cocaine after overhearing officers in the kitchen discuss whether his wife
would be arrested. There is no evidence of interrogation by words or actions on the part
of the officers that elicited appellant's confession regarding the cocaine. (3) By his own
testimony, appellant admitted he was not directly questioned or spoken to when Officer
Hazlett remarked, "what's this." The confession was not obtained through some measure
of compulsion distinct from any compulsive effect inherent in being placed in custody. 
Smith v. State, 60 S.W.2d 885, 889 (Tex.App.-Amarillo 2001, no pet.). Without such
compulsion, direct or indirect, appellant's confession did not arise from custodial
interrogation. The trial court's ruling that appellant's confession was not the result of
custodial interrogation is supported by the record. Thus, there was no requirement that the
confession be electronically recorded. Issue three is overruled. 

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice


 

Do not publish.
1. Appellant does not challenge the conviction for possession of marihuana.
2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). 
3. Appellant admitted possessing marihuana when asked if there was anything he
wished to tell the officers upon their entry into the residence. However, he does not
challenge the marihuana conviction and we decline to hold that the inquiry resulted in
interrogation regarding the cocaine which was not found until later. Appellant testified that
during the interim several officers were in the living room with him but did not question him
nor speak to him. 



in boxers. 
She also testified that the condition persists for a long period of time. Appellant told the
school nurse that complainant had probably been stung in the ear; however, medical
testimony confirmed that the injury was not consistent with a bite or sting, which would have
healed quickly. 

 Complainant's sleeping habit worsened, and on December 2, one of his teachers
asked the assistant principal to wake him. As he placed his hand on complainant's back,
he felt a large mass between his shoulder blades. He was sent to the school nurse to have
his spine checked and as the nurse raised his shirt, she observed the lump as well as other
scars, bruises, and scratches on his upper body. Appellant was scheduled to meet with
school staff the following day regarding tests to be conducted on complainant and the nurse
decided to wait until then to talk about the mass on complainant's back. On December 3,
when appellant met with the nurse, she agreed that complainant required medical attention. 
The school nurse scheduled an appointment with a pediatric facility and alerted the nurse
about suspected abuse and suggested a thorough examination. Upon arriving at the
doctor's office, appellant indicated complainant was seeing the doctor for a possible
problem with his spine and for excessive sleeping. After the examination, the doctor's office
referred the matter to CPS to investigate and complainant was removed from appellant's
care. 

 On December 6, complainant returned to the doctor's office with a caseworker for
a bone scan, x-rays, and an MRI. At trial, Blackman, who assisted Dr. Lukefahr when he
examined complainant, testified to the following injuries found on complainant:


 cauliflower ear which was not consistent with a sting or bite;
 looped scars to the head which are caused by being struck with a cord
or strap that has been doubled over;
 healed scars on either sides of the eyes;
 four linear almost healed cuts on the neck that looked like fingernail
scratches;
 healed looped scars on the right lateral thigh and buttock;
 healed linear and looped scars on the back of the left thigh;
 a round scar consistent with a cigarette burn on the top of the right
hand;
 healed linear and looped scars on the left hand;
 healed burn scars from a hot liquid underneath the arms; 
 healing abrasion on the right shoulder with a firm bony prominence; 
 healed cuts on the front of the chest;
 overlapping injuries which could be either abrasions or burns;
 a lesion on the front of the right shoulder; 
 healed burns on the right pelvic bone and groin area;
 healed contact burns to the scrotum and shaft of the penis; and
 an inverted V-scar on the chest most likely caused by a knife or similar
sharp object.



Blackman also testified that looped scars are not accidental and are consistent with child
abuse from a looped belt or cord. The burns to the groin area had sharp margins and clean
borders, and thus were caused by contact. A bone scan showed post-traumatic
changes-healing scars-from fractures or trauma. She concluded complainant was the
victim of child abuse. A follow-up visit in April 2000 indicated a better attitude in
complainant and better eating and sleeping habits while living in a children's home. In
those few months complainant gained over ten pounds and grew six and one-half
centimeters. The injury to his ear, however, remained unchanged from December and she
testified it could be permanent.

 Doctor Lukefahr testified that complainant was ten years old when he examined him
and that he exhibited an inordinate number of injuries for a child that age. He further
testified that complainant's scars are permanent. He described the injuries as non-accidental. He explained that the burns to complainant's flank area under his arms could
not have been caused by a hot shower. They were more rounded and had a "sort of flow"
whereas burns from a hot shower leave a salt and pepper appearance because of the
drops. Moreover, an ambulatory person would make an effort to get away from the hot
water before being burned. He also testified that "cauliflower ear" is caused by a blow
strong enough to cause bleeding under the skin and form a blood clot that attaches itself
to the cartilage and becomes permanent. He explained that the mass on complainant's
back was caused by either a healed fracture to the shoulder blade or was a benign growth,
but could not reach a conclusion on what caused it. Regarding the contact burns to
complainant's genital area, he categorized them as deep second degree burns which must
have been extremely painful and would have caused him to walk with his legs spread to
minimize contact with his clothes. He did not believe that such burns could be caused by
falling on a hot object; rather, he was of the opinion that a small clothes iron could have
been applied to the scrotum and also could not rule out the possibility that a curling iron
was used. 

 On April 3, 2000, while the victim was residing in a children's home, he was visited
by Rennison and Meredith Shropshire, a caseworker who had met with complainant during
the preceding months. According to Shropshire, up until April 3, the victim had not revealed
the name of the person who abused him. Rennison was not in uniform and was driving an
unmarked patrol car. Complainant sat in the front seat with Rennison and Shropshire sat
in the back. They took him for ice cream and spent time trying to make him comfortable
before questioning him. Rennison asked a few questions about the injuries before making
an audio tape of complainant's statement. Complainant was aware he was being taped and
told Rennison that appellant had heated water in a microwave oven and thrown it on him
because he was "bad." He also claimed that burns to his genital area were made by
appellant with a curling iron. 

 At the time of trial, complainant testified that he had not seen appellant in over a year
and that he loved her and wanted to live with her. He could not recall falling asleep during
classes and could not remember his visit to Dr. Lukefahr in 1999. He also denied that
appellant ever injured him. He claimed never to have observed scars on his body, but did
acknowledge burns to his genital area which he testified were the result of jumping into a
tub full of hot water twice. He could not explain why his knees and feet were not burned. 
When questioned about his difficulty in walking, he claimed he injured his knee in a fight. 
Regarding the injury to his ear, he testified that he woke up one day and his ear was
swollen.

 The only witness for the defense was complainant's biological father. Complainant
had been living with him at the time of trial and had been doing so for a month and a half. 
Although he had not been involved in complainant's life on a regular basis, he could not
recall appellant hurting complainant. Approximately one week before trial, he took it upon
himself to photograph complainant's body. The photographs were introduced into evidence
and according to the father's testimony showed no permanent scars. 

 Based on the evidence presented and the combined and cumulative force of all the
incriminating circumstances and deferring to the jury's resolution of appellant's intent or
knowledge, we conclude the evidence established appellant's culpable mental state that
she desired to engage in conduct reasonably certain to cause serious bodily injury. Thus,
under Jackson, 443 U.S. at 318, the evidence is legally sufficient to establish that appellant
intentionally and knowingly committed injury to a child. Both Blackman and Dr. Lukefahr
testified that complainant's "cauliflower ear" could be permanent and Dr. Lukefahr also
concluded that complainant's scars were permanent. Complainant's father testified,
however, that based on his observations, complainant did not have any permanent scars.
The photographs taken by complainant's father depicting complainant's face, upper body,
and frontal genital area do not show the extensive injuries testified to by the State's
witnesses; however, the unauthenticated photographs were taken several years after the
investigation of abuse. Thus, the jury as the sole trier of fact was free to resolve conflicts
or inconsistencies in the evidence and believe all, some, or none of the evidence. Hitt v.
State, 53 S.W.3d 697, 709 (Tex.App.-Austin 2001, pet. ref'd), citing Bowden v. State, 628
S.W.2d 782, 784 (Tex.Cr.App. 1982) and Chambers v. State, 805 S.W.2d 459, 461
(Tex.Cr.App. 1991). We conclude the evidence is legally sufficient to show that appellant
inflicted serious bodily injury upon complainant.

 Concluding that the evidence is legally sufficient to support the verdict, we must now
determine, after a neutral review of all the evidence, whether it is factually sufficient to
support the verdict. Johnson, 23 S.W.3d at 11. It is the exclusive province of the fact finder
to determine the credibility of the witnesses and the weight to be given their testimony. 
Johnson v. State, 571 S.W.2d 170, 173 (Tex.Cr.App. 1978); Armstrong v. State, 958
S.W.2d 278, 284 (Tex.App.--Amarillo 1997, pet. ref'd).

 In addition to the evidence reviewed under our legal sufficiency analysis, the State
also presented evidence that appellant had previously injured complainant. Doctor
Lukefahr testified that according to medical records, when complainant was six he was
taken to the emergency room by appellant for a fracture to his left arm. She claimed he had
fallen from a couch, but according to Dr. Lukefahr, it was unusual for a child to have a
fracture so close to the shoulder and that the injury was probably caused by a substantial
amount of force in a wrenching, pulling, or twisting manner. According to a nurse's
assessment dated July 22, 1996, complainant claimed appellant twisted his arm. Five
years later at trial, however, complainant testified that he broke his arm when a bicycle fell
on him. A CPS caseworker testified that following the injury to the arm, complainant was
removed from appellant's home for a year until she completed psychological testing and
therapy. 

 A former friend and neighbor of appellant's testified that when complainant was
between seven and nine months old, she entered appellant's small apartment to find
complainant confined to a dining room table by duck tape across his ankles, legs, arms,
and mouth. According to the witness, appellant complained that the baby had been crying
all day and was getting on her nerves. When complainant was two years old, appellant and
the witness worked at a small daycare. On one occasion, complainant noticed appellant
and ran up to her with outstretched arms crying out, "mama, mama" and appellant "popped"
him in the head with a cordless telephone and told him to get away. After a neutral review
of all the record evidence under Johnson, 23 S.W.3d at 11, and without substituting our
own judgment, we conclude the evidence is factually sufficient to support the verdict. Issue
two is overruled.

 By her third issue, appellant complains the jury was biased because juror Mary
Allums failed to disclose during voir dire knowledge of facts of the case. We disagree. By
her motions for new trial, appellant alleged the following:

 Newly discovered evidence.

 There is newly discovered evidence which would effect the outcome of the
case in that Juror Mary Allums had a prejudice against the defendant and a
bias for the state which she failed to disclose during voir dire when she was
questioned. Juror Allums would have been struck for cause, if she had
answered truthfully concerning her knowledge of the defendant and/or the
case.

 

Attached to the motion is a verification by trial counsel; however, no affidavit in support of
the allegation is attached. See generally McIntire v. State, 698 S.W.2d 652, 658
(Tex.Cr.App. 1985) (en banc) (holding that a motion for new trial alleging juror misconduct
must be supported by the affidavit of a juror or some other person in the position to know
the facts). Although no record references were provided in her argument as required by
Rule 38.1(h) of the Texas Rules of Appellate Procedure, our review of the voir dire
proceedings reveals that the State asked at least seven questions of Allums, none of which
indicated knowledge of the facts of the case that would show bias toward appellant. During
defense counsel's voir dire examination no questions were asked of Allums.

 The Court of Criminal Appeals has indicated great reluctance in engaging in
speculation regarding bias, if any, of a juror in favor of or against a defendant. Jackson v.
State, 548 S.W.2d 685, 697 (Tex.Cr.App. 1977). In Jackson, the Court noted that it was
incumbent upon appellant to establish bias during voir dire and that failure to do so and
present a challenge for cause waived any error. Id. Appellant's conclusion in her motion
for new trial that when questioned during voir dire Allums failed to disclose a bias against
her is not supported by the record. The State's questions to Allums were not designed to
elicit bias and the defense did not question the panel, specifically Allums, regarding bias. 
Without a bill of exception demonstrating that Allums was biased or an affidavit showing the
same, appellant has not preserved her complaint for appeal. See Roberts. v. State, 172
Tex. Crim. 500, 360 S.W.2d 883, 886 (1961); Henson v. State, 650 S.W.2d 432, 434-35
(Tex.App.-Houston [14th Dist.] 1982), aff'd 683 S.W.2d 702 (Tex.Cr.App. 1984). Issue
three is overruled.

 By her fourth issue, appellant contends the trial court erred in admitting the testimony
of physician assistant Blackman because it failed to have a scientific basis and was
inadmissible under Rule 702 of the Texas Rules of Evidence. She further argues that the
trial court erred in denying her request to voir dire Blackman on her qualifications as an
expert regarding burns. We disagree. When Blackman testified that complainant's burn
scars were in a liquid pattern, i.e., caused by hot liquid or scalding, defense counsel
requested to voir dire the witness on her "expertise in the area of burns." After the trial
court denied the request, Blackman testified about complainant's healed burn injuries as
well as other injuries for approximately eight pages of the reporter's record. After an off-the-record bench conference, defense counsel announced that "[b]ased upon counsel's
next question we really do not have a voir dire challenge concerning the qualifications of
this witness." Based upon appellant's withdrawal of her request to voir dire Blackman, we
conclude that trial court error, a question we do not decide, was waived. See generally
Lemos v. State, 27 S.W.3d 42, 47 (Tex.App.-San Antonio 2000, pet. ref'd) (holding that
counsel's comment, "I withdraw my objection to that" waived any complaint. Issue four is
overruled. 

 By her final issue, appellant contends the trial court improperly admitted
complainant's tape recorded statement because it did not meet the statutory requirements
of an outcry statement. We disagree. A trial court has broad discretion in determining the
admissibility of evidence and its ruling will not be disturbed on appeal absent a clear abuse
of discretion. Garcia v. State, 792 S.W.2d 88, 92 (Tex.Cr.App. 1990) (en banc). An outcry
statement is one made by the child against whom the offense was allegedly committed to
the first person, 18 years of age or older, other than the defendant. Tex. Code Crim. Proc.
Ann. art. 38.072, § 2(a) (Vernon Supp. 2002). An outcry statement is not inadmissible if:

 (1) on or before the 14th day before the date the proceeding begins, the party
intending to offer the statement:

 (A) notifies the adverse party of its intention to do so;

 (B) provides the adverse party with the name of the witness
through whom it intends to offer the statement; and 

 (C) provides the adverse party with a written summary of the
statement;

 (2) the trial court finds, in a hearing conducted outside the presence of the
jury, that the statement is reliable based on the time, content, and
circumstances of the statement; and 

 (3) the child testifies or is available to testify at the proceeding in court or in
any other manner provided by law.


Art. 38.072 § 2(b). Compliance with the statute is mandatory for the statement to be
admissible. Long v. State, 800 S.W.2d 545, 547 (Tex.Cr.App. 1990). 

 On the 14th day before trial, the State filed its notice of intent to use complainant's
outcry statement made to Officer Rennison about the alleged abuse. A written summary
of the statement provided:

 I was burned from hot water my Mom put on me. She heated it up in the
microwave. She was not making soup or coffee. It happened because I was
acting bad. The only reason she heated up the water is to put it on me. She
hurt my hip when she was spanking me, she did it on accident, she was trying
to whoop me. She was meaning to hit me on my butt and I kept moving. She
was hitting me with a belt. My Mom Tina Clemons burned me on my privates
from a curling iron. My Mom poured hot water on me and burned me. She
never burned me with anything else.


 Outside the jury's presence, Rennison testified that prior to making the audio tape
of complainant's statement, he and caseworker Shropshire spent approximately one hour
trying to make him feel comfortable. Afterward, he initiated a conversation about
complainant's injuries and the burns to his genital area. He explained that he had
conducted tests at his home on water temperature and that it was very important that he tell
the truth. After complainant claimed that appellant inflicted the burns with a curling iron,
Rennison told him he was activating the tape recorder. Complainant told him that appellant
had heated up water in the microwave and put it on him for acting bad. When asked how
his "private parts" became burned, complainant answered that appellant had used a curling
iron. He also told Rennison that most of his injuries were caused by appellant. 

 Appellant argues the State violated the statutory notice requirement by not disclosing
that Rennison's conversation with complainant prior to making the audio tape was the
actual outcry statement. She contends she suffered harm by the admission of the tape
which she claims was the result of coaching and coercion and also questions the reliability
of the tape. The purpose of requiring notice is to prevent a defendant from being surprised
at trial by a victim's outcry statement. Upton v. State, 894 S.W.2d 426, 429
(Tex.App.-Amarillo 1995, pet. ref'd); Fetterolf v. State, 782 S.W.2d 927, 930
(Tex.App.-Houston [14th Dist.] 1989, pet. ref'd).

 The caseworker that accompanied Rennison when he questioned complainant
testified that he asked complainant if they could talk about the incidents that led to his
injuries and then explained that he needed to record the statement. She believed
Rennison's questions were open-ended questions, i.e., they did not suggest an answer. 
She claimed that complainant seemed comfortable speaking to him and was not threatened
or coerced in any manner. Furthermore, appellant's claim of surprise is without merit
because the contents of the taped statement were elaborations on the introductory
questions asked just prior to activating the recorder. We conclude that the State complied
with the requirements of article 38.072 and thus, the trial court did not abuse its discretion 
in admitting complainant's taped outcry statement. Issue five is overruled. 

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice



Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.