**Adelfino ALANIZ, Appellant,**

**v.**

**STATE of Texas, Appellee.**

**No. 13–81–109–CR.**

Court of Appeals of Texas,
Corpus Christi.

Oct. 28, 1982.

Donald B. Dailey, Jr., Douglas Tinker, Tinker, Dailey & Tor, Corpus Christi, for appellant.

Wm. B. Mobley, Jr., Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

UTTER, Justice.

Appellant was convicted of possession of heroin by a jury which assessed punishment, enhanced by a prior felony conviction, at thirty years imprisonment. We affirm.

In his first three grounds of error, appellant contends that the trial court erred by admitting heroin into evidence which was seized contrary to his rights (1) under the Fourth and Fourteenth Amendments to the United States Constitution; (2) under Article 1, Section 9 of the Texas Constitution; and (3) under Article 14.04 of the Texas Code of Criminal Procedure.

At the pre-trial hearing on the Motion to Suppress Evidence, Special Agent George Spaulding of the Drug Enforcement Agency testified by deposition that about 7:15 p.m. on August 23, 1979, he received a phone call at his residence in McAllen, Texas from an unnamed informant who alleged that appellant, Mr. Alaniz, accompanied by at least one of his children, was immediately departing Edinburg, Texas for Corpus Christi, Texas with slightly more than one ounce of heroin concealed in the windowshield support post of either a white-over-red Pontiac Firebird or a bluish-gray 1968 Camaro with "body putty all over it." The informant gave Agent Spaulding the telephone number of the residence Mr. Alaniz was departing, stated that Mr. Alaniz was the only person there, and added that if no one were to answer a telephone call to that number, Mr. Alaniz could be presumed to have departed for Corpus Christi. Mr. Alaniz was known to Agent Spaulding.

Agent Spaulding telephoned the Edinburg number but no one answered. He then telephoned the Corpus Christi Police Department, asking for Narcotics Officer Leal, who returned the call about 7:30 or 7:40 p.m. Agent Spaulding related what he had been told by the informant, and stated that he had received information from this informant before which had been verified. Officer Leal drove to the police station, called in some other police officers, and instituted surveillance along three routes entering Corpus Christi. There was no attempt to obtain any warrant.

Captain Wallace Crisp, who had been notified by Officer Leal of the information given by the informant, testified that he established surveillance along Farm Road 665 about 8:30 p.m. When an automobile corresponding to the description of the white-over-red Pontiac drove past him, Captain Crisp followed it, noting that the driving was erratic; apparently, the car was straying from its line of traffic, veering across the center stripe, and travelling approximately forty miles per hour. As he approached the vehicle, it slowed, pulled over, and stopped. Captain Crisp passed by and turned around, but again the automobile pulled over as he neared it. This time

Captain Crisp also stopped, displayed his badge, and directed the operator not to move his vehicle. On examination of the driver's license, he noted that the name was that of the appellant, Mr. Alaniz. In addition, Captain Crisp observed that Mr. Alaniz was unsteady on his feet and appeared intoxicated.

Officers Galvan and Almanza soon arrived in an unmarked pick-up truck. Neither officer was in uniform. Officer Almanza testified that there were two young children in the automobile, that he could smell marihuana smoke, and that there was an open beer in the automobile.

Captain Crisp then removed the passenger-side windshield support post and a piece of molding, beneath which he found heroin. Appellant insists that consent to the warrantless search was never given. At the pre-trial hearing on the Motion to Suppress Evidence, appellant contended that the heroin was inadmissible because (1) the search was performed without probable cause and, (2) lacking probable cause, the search could not be justified by establishing that appellant had consented to it. The trial court overruled appellant's Motion, thus preserving his right to appellate review. *Riojas v. State*, 530 S.W.2d 298 (Tex.Cr.App.1975).

■ "Probable cause for a search exists where the facts and circumstances within the knowledge of the officer on the scene and of which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find evidence pertaining to a crime." *Quilice v. State*, 624 S.W.2d 940 (Tex.App.—San Antonio 1981, no pet). The requirement of "reasonably trustworthy information" is satisfied when there are underlying circumstances from which the officer could conclude that the undisclosed informant providing the information was credible or his information reliable. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). This standard is met when the officer affirms that he has received information from the undisclosed informant on previous occasions and that such information has proved to be true and cor-

rect. *Carmichael v. State*, 607 S.W.2d 536 (Tex.Cr.App.1981). In assessing the sufficiency of the probable cause to search a suspect, the court may also consider the accuracy of the information supplied by the informant as verified by the officer, as well as the specificity of that information. *Draper v. U.S.*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). "The question of whether a warrantless search is constitutionally valid can only be decided in terms of the concrete factual situation presented by each individual case." *Nastu v. State*, 589 S.W.2d 434 (Tex.Cr.App.1979).

In this case, Agent Spaulding testified that his informant had provided verified information on previous occasions. The nature of the information was specific and its accuracy was confirmed in each detail, justifying a man of reasonable caution in concluding that the crucial information would also be accurate; that is, that heroin lay concealed in the windshield support post.

Appellant relies heavily on the reasoning developed in *Aguilar*, supra, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 and *Spinelli v. U.S.*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in which the United States Supreme Court addressed the circumstances under which probable cause to search for contraband might arise after peace officers received information from unnamed informants. Although a preference for searches made with a warrant was repeatedly emphasized in *Aguilar*, the analysis for whether information supplied by an informer constitutes probable cause for a search with or without a warrant has now merged. *Spinelli*, 393 U.S. at 417, n. 5, 89 S.Ct. at 589, n. 5. See also *Hicks v. State*, 545 S.W.2d 805 (Tex.Cr.App.1977).

The *Aguilar* case established a two-fold test, requiring generally that an affidavit be based on "reliable information from a credible person." First, there must exist more than mere suspicion and belief without any statement of adequate supporting facts; since the magistrate will examine the facts for himself to determine whether the warrant will issue, the underlying circumstances must be stated. Second, there must be an affirmative allegation that the

affiant spoke with personal knowledge—not a mere suspicion, belief, or conclusion that certain circumstances exist. Thus, the persons attempting to obtain a search warrant must state why their source is reliable.

In *Spinelli,* the Court expanded the *Aguilar* concept by adding that (1) the affiant-officer must support his claim that the informant was credible or the information was reliable, and (2) if there is no statement in the affidavit detailing how the information was gathered, it is important that the informant's information describe the defendant's criminal activity in detail sufficient enough to assure the magistrate that he is relying on something more substantial than casual rumor; that is, underlying circumstances must be set forth so that the magistrate may independently judge the validity of the informant's conclusion. Noted as exemplifying proper police work was *Draper,* supra, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 which was cited in *Spinelli,* 393 U.S. at 416, 89 S.Ct. at 589.

"The detail provided by the informant ... provides a suitable benchmark. While Hereford, the Government's informer in that case, did not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. Moreover, Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way."

The parallels between *Draper* and the case before us are unmistakeable. In this case, the informant did not state the way he had obtained his information. However, he knew that appellant was leaving Edinburg immediately by automobile on his way to Corpus Christi. He knew that at least one child would accompany appellant; he described two automobiles, either one of which might be used by appellant; he knew almost the precise amount of heroin that was being transported; and he described

with exactitude the obscure hiding place for the heroin. That he did not describe appellant or his clothes is easily ascribed to the fact that appellant was known to the person to whom the informant relayed his information, and that, since appellant would be driving an automobile, the description of the vehicle would be of far more practical importance.

The concern expressed by the *Spinelli* court for individual rights is not abandoned here. Uncontroverted testimony offered by the State clearly established reliance on something more substantial than casual rumor circulating in the underworld or mere "police suspicion". There is no suggestion that admitting this heroin into evidence will dilute "important safeguards that assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry." *Id.* 393 U.S. at 419, 89 S.Ct. at 590.

Similarly, the tests in *Aguilar* were propounded to quell the concern of the Court that "the inferences from the facts which lead to the complaint" will be drawn not "by a neutral and detached magistrate," as the Constitution requires, but instead by a police officer "engaged in the often competitive enterprise of ferreting out crime." *Aguilar,* supra, 378 U.S. at 115, 84 S.Ct. at 1514.

In the case before us, the specificity of the informant's tip, combined with the independent corroboration by the police officers detailed in the statement of facts, establishes sufficient confidence that constitutional safeguards were met, and that probable cause existed to search for heroin in the place specified by the informant.

However, the mere fact that probable cause exists for the search of the automobile will not obviate the necessity for procuring a search warrant unless the search falls within an exception to the general rule such as, in this case, whether exigent circumstances make obtaining a warrant impracticable. *Stoddard v. State,* 475 S.W.2d 744 (Tex.Cr.App.1972). Appellant therefore contends in his brief that exigent circumstances sufficient to justify the failure to obtain a warrant do not exist.

Agent Spaulding spoke to his informant about 7:15 p.m. and to Officer Leal about 7:30 p.m. Officer Leal did not arrive at the police station until about 8:00 p.m.; surveillance was not established until about 8:30 p.m. Appellant could have arrived in Corpus Christi as early as 9:30 p.m. This testimony was uncontroverted. Officer Leal testified that obtaining a search warrant could take up to an hour and a half. Appellant's contention in his brief that this estimate was excessive was not raised at trial and will not be addressed. The trial court, by denying appellant's Motion to Suppress, found that the estimate was reasonable and that procuring a warrant was impracticable.

◼ Finally, there was a conflict in the testimony on whether appellant consented to the search of his automobile. Voluntariness of consent to search is a question of fact to be determined from the totality of circumstances. *Myers v. State,* 627 S.W.2d 527 (Tex.App.—Fort Worth 1982, pet. ref'd). A finding of fact by the trial judge at a hearing on a motion to suppress will not be disturbed so long as it is supported by the record. *Green v. State,* 615 S.W.2d 700 (Tex.Cr.App.1980). Officers Galvan and Almanza testified that they asked appellant, "Do you mind if we search your car?", to which appellant replied, "Go ahead. You are not going to find anything." Appellant himself testified that, after the officers told him they were going to search his car, he replied "Just go ahead." The record of the hearing thus supports a determination that appellant consented to the search of his automobile.

We hold that the warrantless search of appellant's vehicle was supported by probable cause. The Motion to Suppress Evidence was properly denied, and appellant's first three grounds of error are overruled.

In his fourth ground of error, appellant challenges the qualifications of a State witness, Special Agent Frank Garcia of the Federal Drug Enforcement Administration and United States Department of Justice. Appellant contends, apparently, that because Mr. Garcia is not a chemist, he is unqualified to offer expert testimony on how many doses a given amount of heroin will supply. Appellant cites no authority for this proposition.

Mr. Garcia testified that he had been instructed in various schools about diluting heroin; that he had actually cut substances simulating heroin; and that he had "sat down with ... heroin violators which we utilize sometimes as informants." Mr. Garcia had been employed by the Federal Drug Enforcement Administration for some six years, and had operated as an undercover agent at least forty times. Appellant presented no evidence demonstrating that Mr. Garcia was unqualified to testify about the number of doses an amount of heroin might supply; the objection stated only that he was "not qualified or competent to do so."

◼ "The special knowledge which qualifies a witness to give an expert opinion may be derived entirely from a study of technical works, or specialized education, or practical experience, or varying combinations thereof; what is determinative is that his answers indicate to the trial court that he possesses knowledge which will assist the jury in making inferences regarding fact issues more effectively than the jury could do so unaided." *Holloway v. State,* 613 S.W.2d 497 (Tex.Cr.App.1981). "Whether a witness offered as an expert possesses the required qualifications is a question which rests largely within the discretion of the trial court, and the decision to admit or exclude the proposed opinion testimony will not be disturbed unless a clear abuse of discretion is shown." *Steve v. State,* 614 S.W.2d 137 (Tex.Cr.App.1981). No abuse of discretion is shown and appellant's fourth ground of error is overruled.

◼ In his fifth and final ground of error, appellant claims that the trial court erred by overruling his Motion to Dismiss for failure to grant a speedy trial under the Speedy Trial Act. This contention is also without merit.

In *Barfield v. State,* 586 S.W.2d 538 (Tex. Cr.App.1979) the Court stated:

Once the defendant files his motion to dismiss for failure to adhere to the provi-

sions of the Act, the state must declare its readiness for trial then and at the times required by the Act. This declaration is a prima facie showing of conformity to the Act, but can be rebutted by evidence submitted by the defendant demonstrating that the state was not ready for trial during the Act's time limits... At the hearing on the motion to dismiss, the prosecuting attorney stated that he was ready to try the case then and had been ready to try the case ever since the complaint and information had been filed. No evidence was elicited to rebut this statement of readiness and it remained unchallenged. This being the case, we hold that the requirements of the Speedy Trial Act were fulfilled...

Appellant was arrested on August 23, 1979. At his hearing on the Motion to Dismiss, the State announced that it was ready for trial on the date set, and that it had been ready for trial since the grand jury indictment was returned on November 30, 1979. No evidence was elicited to rebut this statement of readiness and it remained unchallenged. All five of appellant's grounds of error are overruled and the judgment of the trial court is AFFIRMED.