**Ralph G. TOVAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–85–213–CR.**

Court of Appeals of Texas,
Corpus Christi.

April 17, 1986.

William W. Burge, Houston, for appellant.

Daniel Shindler, Bay City, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a conviction for possession of marihuana in an amount less than five pounds but more than four ounces. Appellant asserts four grounds of error, the second of which we find is cause for a reversal of the conviction: that the trial court improperly allowed the introduction of an alleged involuntary confession.

Shortly after midnight on June 24, 1984, appellant was observed by a Wharton police officer attempting to unlock the door of a parked car. The car was in a private parking lot in front of a local tavern. Seeing that the appellant was having some difficulty opening the car door, the officer summoned another officer to observe the "subject." After the other officer arrived, they observed the appellant, who still had not gotten the car door open. They decided to approach the appellant.

The first officer determined that appellant appeared to be intoxicated, and that he was attempting to open the car door with a house key. In fact, the car key was on a different key chain, still in appellant's pocket. The officer arrested the appellant for public intoxication. He effected the arrest while the second officer called a tow truck for the car. The second officer, while entering the car to place the keys in the ignition for the towing company, noticed an open brown paper bag on the passenger side of the front floorboard. He could see the marihuana inside, in clear plastic bags. The marihuana was taken into custody, apparently after the first officer had taken appellant from the scene.

Appellant returned the following day to claim the car. With him was Catherine Pena, who owned the car and who, by appellant's account, was living with appellant as his common-law wife. By the time of trial, they had been ceremonially married. While at the police station, appellant signed a statement admitting ownership of the marihuana and denying that Ms. Tovar was involved. He was arrested for possession of marihuana. Appellant was tried before a jury and convicted on March 18, 1985.

During a pre-trial hearing on appellant's motion to suppress the marihuana seized from Ms. Tovar's car, appellant challenged the lawfulness of the police entry into the car. The trial court had before it evidence from one of the officers that he had asked appellant for the keys to the car and that appellant had voluntarily given him the car keys. Appellant took the stand at the hearing to dispute this testimony. He claimed that the arresting officer went through his pockets and took the keys.

At a suppression hearing, the trial court is the sole judge of the witness' credibility. He may choose to believe or disbelieve the testimony of any witness. *Rumbaugh v. State*, 629 S.W.2d 747, 752 (Tex.Crim.App. 1982); *Walker v. State*, 588 S.W.2d 920, 924 (Tex.Crim.App.1979); *Lopez v. State*, 660 S.W.2d 592, 594–95 (Tex.App.—Corpus Christi 1983, pet. ref'd). The trial judge's ruling on a motion to suppress will not be disturbed if it has support in the evidence. *Green v. State*, 615 S.W.2d 700, 707 (Tex. Crim.App.1980); *Alaniz v. State*, 647 S.W.2d 310, 314 (Tex.App.—Corpus Christi 1982, pet. ref'd).

The trial court apparently found from the police officer's testimony that appellant consented to the entry of the car. The marihuana was discovered in plain view after the entry. We do not disturb the trial court's action in overruling appellant's motion to suppress the marihuana.

The admissibility of appellant's inculpatory written statement presents the most serious challenge on appeal. That statement, introduced at the pre-trial suppression hearing, reads in part as follows:

> Saturday evening I borrowed Catherine Pena's car to go to Houston. Catherine did not know where I was going, she thought I was just going to Stafford. I went to Houston and bought three pounds of marijuana. I put it in the front seat of the car. The marijuana cost me $1,500.00. (sic) dollars. I stopped at the Red Bull in Wharton and had some drinks. When I came out I was arrested by the Wharton City Police for public intoxication. The marijuana belonged to me and Catherine Pena didn't know anything about it.

In determining whether a confession was voluntarily given, we must consider the totality of the circumstances established. *McCrory v. State*, 643 S.W.2d 725, 734 (Tex.Crim.App.1982); *DeLeon v. State*, 684 S.W.2d 774, 777 (Tex.App.—Corpus Christi 1984, no pet.). A confession is not admissible where it is obtained as a result of a benefit positively promised to the defendant, the promise is made or approved by one in authority, and it is of such a character that it would be likely to influence a defendant to speak untruthfully. *Hardesty v. State*, 667 S.W.2d 130, 134 (Tex.Crim.App.1984). This is the Texas rule, adapted from *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The United States Supreme Court applied to all state prosecutions this rule, which says, in effect, that a confession must be free and voluntary and not obtained by any sort of threats or violence, nor by any direct or implied promises, however slight, nor by the exertion of any improper influence. *See also Roberts v. State*, 545 S.W.2d 157, 160–61 (Tex.Crim.App.1977).

We reiterate that we must uphold the trial court's decision to admit the appellant's statement if supported by the evidence. *Rumbaugh*, 629 S.W.2d at 752; *Green*, 615 S.W.2d at 707. We also recognize that the *Miranda* decision [1] acknowledged a tension between legitimate police questioning as a tool for effective law enforcement and the inherently coercive nature of the investigative process. *See Moran v. Burbine*, —— U.S. ——, ——, 106 S.Ct. 1135, 1144, 89 L.Ed.2d 410, 54 U.S. L.W. 4265, 4268 (U.S. March 10, 1986).

Here, the trial court had before it evidence that appellant and his wife came to the Wharton Police Department on Monday morning after an unsuccessful attempt to reclaim Ms. Tovar's car from the towing company. They were told to talk to the police to get the car back. When at the police station, appellant was told to wait in the reception area while an investigator and another police officer escorted Ms. Tovar, who was between four and eight months pregnant, into their office for questioning. Appellant had waited between a half-hour and an hour-and-a-half until Ms. Tovar reappeared, escorted by a police officer. The two walked past appellant without a word and went across the street in the direction of the jail. It is clear from the testimony of the investigator and Ms.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

Tovar at the hearing that the two policemen had confronted her with the seized marihuana and the fact that she owned the car. It was suggested that her fingerprints would be on the plastic bags. She consented to being fingerprinted, and she was taken to the jail for that purpose.

Appellant was then called into the investigator's office. According to appellant, the investigator "said that I was in a lot of trouble and I better go ahead and sign a confession now because if they didn't file on me, they were going to file on my wife." He signed the statement against prior advice of counsel, "because I just wanted to be charged myself and for them to let my wife go." The investigator denied making any threats or promises to appellant to induce him to sing. However, he testified on cross-examination as follows:

Q Did you tell him you would not file on his wife and would release her car if he confessed?

A Well, I don't know if that's the way I told it or not.

Q How did you say it?

A Well, due to the fact that he had possession of the car and if it wasn't his, it was her car. It was in her car and we would certainly be looking at her as a possibility of being filed on.

Q Okay.

A I'm sure that's what I explained to him.

Q *And that if he took the wrap (sic), in other words, then she wouldn't be filed on?*

A *That's correct.*

Q And you explained that to him?

A Yes, sir. (Emphasis added.)

In *Roberts*, 545 S.W.2d 157, relied on by the State, the Court of Criminal Appeals held:

A threat made by police officers to arrest or punish a close relative or a promise to free a relative of a prisoner in exchange for a confession may render the prisoner's subsequently made confession inadmissible in evidence.... However, where no express or implied promise or threat is made by the police, a prisoner's

belief that his cooperation will benefit a relative will not render the prisoner's subsequent confession inadmissible in evidence. *Id.* at 161.

The Court then concluded:

A fair interpretation of [the police officer's] testimony shows that it was not he, but that it was the appellant, who first said the appellant's wife was innocent and initially introduced the subject of leniency for his wife. *Id.*

■ We find the circumstances in this case sufficiently distinguishable from *Roberts* to require holding the confession inadmissible. Although appellant in this case "created the situation" which placed his wife under suspicion, he apparently had little experience in dealing with law enforcement officers. The jury found that he had no prior felony convictions as part of probating his sentence. Both he and his wife testified at the hearing on motion to suppress, and their versions of the circumstances surrounding appellant's signing of the confession differed in several respects from the investigator's, who was the only witness called by the State. While the investigator had the duty to determine whether Mr. Tovar should be held or released, it was the investigator who introduced the idea of leniency for appellant's wife, not the accused as in *Roberts*. The State offered no evidence that it reasonably suspected Ms. Tovar was exercising care, custody, or control over the marihuana during the time it was discovered. In *Roberts*, the defendant's wife was inside the car at the time of the discovery of narcotics.

Beyond this, appellant testified that he was concerned that his pregnant wife was already being booked into jail. The wording of the statement obviously reflects this fear. More importantly, the testimony of the investigator in the instant case differs markedly from that of the police officer in *Roberts*. In *Roberts*, the police officer testified, "[W]ell, he said, 'Man, she doesn't know anything about it.' And I said, 'If she doesn't really know anything about it,' I said, 'Are you willing to make a state-

ment to that effect?' And he said, 'Yes, I am.'" *Id.* at 160. Here, the police officer testified that he told appellant that if he "took the wrap (sic)," his wife would not be charged. Even if the trial judge determined that only the investigator's testimony was credible, the totality of that testimony is sufficient to establish that the confession was given in exchange for a promise of leniency for appellant's wife.

In *Hardesty v. State*, 667 S.W.2d 130 (Tex.Crim.App.1984), as in this case, the investigator who took the inculpatory statement repeatedly denied on direct examination that he had promised the appellant any reward or benefit in order to obtain his confession. However, in response to questioning by the defense, he admitted that the appellant gave statements relating to two or three offenses, but that only one offense was filed against appellant, even while he continued to deny that he had promised the appellant anything. *Id.* at 133–34. An en banc Court of Criminal Appeals held that the statement relating to the offense charged was inadmissible, because the totality of the testimony showed that a promise was made.

We hold the confession in this case inadmissible, because it was obtained by a promise of leniency for appellant's wife. Additionally, the totality of the circumstances surrounding the confession show that appellant was improperly influenced to give the statement by the threat of jailing and prosecuting his pregnant wife. Viewing all the evidence, we cannot say that the error in admitting appellant's statement was harmless beyond a reasonable doubt. *See McCrory v. State*, 643 S.W.2d 725, 735 (Tex.Crim.App.1982).

Appellant's conviction is reversed, and the cause is remanded to the trial court.