IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-325-CR





DONALD LA MONTE WADE,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT



NO. 40,055, HONORABLE RICK MORRIS, JUDGE PRESIDING



 




 This is an appeal from a conviction for the unlawful possession of cocaine in the
amount of twenty-eight grams or more with the intent to deliver. After the jury found the
appellant guilty, the trial court assessed his punishment at thirty-five years' imprisonment.

 Appellant advances two points of error contending that the trial court erred in
admitting into evidence his extra-judicial written confession over objection that the confession was
not voluntary in that it was the result of mental coercion and improper inducement in violation of
the Fifth Amendment, United States Constitution and Tex. Code Crim. Proc. Ann. art. 38.22
(West 1979 & Supp. 1992). Appellant's counsel has carefully separated the federal and state
issues into separate points. See McCambridge v. State, 712 S.W.2d 499, 501-02 n.9 (Tex. Crim.
App. 1986). It is appellant's argument that the police officers led him to believe that his girlfriend
and her mother would be arrested if he did not give a confession claiming the cocaine belonged
to him.

 The trial court held a hearing on appellant's pretrial motion to suppress the
confession. At the conclusion of the hearing, the trial court overruled the motion and found that
the confession had been voluntarily given and was admissible in evidence. At the trial on the
merits when the extra-judicial confession was offered into evidence, the appellant objected on the
same basis as set forth in his suppression motion and on other grounds not pertinent to the points
of error. The objections were overruled.

 The suppression hearing revealed that about 2 p.m. on February 11, 1991, four
officers of the Temple Police Department executed a search warrant at a house located at 1419
East Avenue B in Temple. The house belonged to Mary Wright, the mother of appellant's
girlfriend. Appellant, however, was named in the warrant. He was seen to enter the house
shortly before the officers executed the warrant. With regard to cocaine trafficking, appellant was
no stranger to the police. Appellant was found in the living room, and Mary Wright was found
in the larger bedroom, dressing. Wright ordered Agent Wills out of the bedroom. When he
explained that she had to come to the living room to prevent any evidence from being destroyed
or any weapon from being obtained, Wright resisted and a struggle ensued. Wright was taken to
the living room and detained. She was very abusive to the officer and finally she was handcuffed. 
Wright insisted on returning to her bedroom, claiming that she was having chest pains and needed
her heart medicine. Her medicine was brought to her. Later, she was removed by ambulance to
a hospital.

 Virginia Ockleberry, appellant's girlfriend, arrived home before her mother's
departure and during the course of the search. She was told by the officers to take the children
who were present and leave. She did.

 An hour or so after the search commenced, Ike, the narcotics detection trained
police dog, "alerted" the floor in a closet. The officers found a piece of the floor had been cut. 
When the piece was lifted, access was provided to an area underneath the house where the officers
found a plastic bag containing coffee and smaller sacks of a substance later shown to be 157.95
grams of cocaine, 74 per cent pure. A few minutes later, Officer William John Dorsey told
appellant that he was under arrest and handcuffed him. Dorsey later heard appellant asking to
speak to him. Officers-witnesses described appellant as appearing to be "defeated" or "dejected"
at this point. Dorsey thought that appellant was shocked that the officers had found the cocaine.

 Officer Dorsey took appellant to the larger bedroom and gave him the Miranda (1)
warnings. Dorsey was of the impression that appellant was concerned about whether he would
serve "jail time." Appellant told Dorsey that the cocaine found was "all his"; that Mary Wright
knew nothing about the cocaine; that he had come to the Wright house a few days earlier and
buried the cocaine underneath the house without anybody's knowledge; and that Wright "wasn't
to get in any type of trouble." Appellant indicated that he would be willing to give a statement
and to give the beeper number of his Houston connection to Dorsey.

 Appellant was taken to the police station where he was again warned in accordance
with Miranda and article 38.22. Appellant stated he understood his rights. He did not request
counsel, waived his rights, and gave a written statement to Officers Dorsey and Wills. Appellant
told the officers that he had buried the cocaine with the coffee to distract narcotic-sniffing police
dogs. Dorsey and Wills denied that any promises or threats or improper influence was used to
obtain the statement from the appellant. Dorsey specifically denied that he had promised appellant
that if appellant gave a confession that Mary Wright and Ockleberry would not be arrested. 
Officer Dorsey did testify that at the time of his earlier conversation with appellant at the house,
he had told appellant that he was glad that appellant "was coming forth with this" because Wright
could possibly have been charged. Dorsey denied, however, any deal had been made with
appellant. Agent Dan Wills testified that no promises were made to appellant concerning Mrs.
Wright although appellant was emphatic that the cocaine was his and not Mrs. Wright's. Wills
recalled that Dorsey assured appellant that the officers were aware of his claim of ownership and
that it probably would prevent Mrs. Wright's arrest.

 Appellant admitted that he had initiated the conversation with Dorsey because he
overheard the officers talking about charging his "mother-in-law" and girlfriend with possession
of cocaine. He also testified that the purpose of initiating the conversation was to talk "about my
time and stuff." Appellant claimed that Dorsey said that if he didn't give a statement they "all"
were going to be charged. He was led to believe that if he gave a statement that "perhaps they
would not be charged." Otherwise, appellant stated that he would have remained silent. 
Appellant acknowledged that he had been properly warned before the giving of the statement and
that the officers had placed everything he said in the statement. Appellant believed that by making
the statement he was protecting Virginia Ockleberry and her mother.

 Mary Wright gave her version of what happened. She described being taken to the
living room against her wishes, being handcuffed and later taken to the hospital. She was not
present when the cocaine was found and she was not arrested nor charged with its possession. 
Virginia Ockleberry testified that she came home during the search and was told by the police
officers to leave. She stated that Officer Dorsey came outside the house and told her that she
needed to go to the police station and to give a statement that appellant "was coming to the house
and staying all night" or that he would take her and her mother to jail. Ockleberry admitted she
never gave a statement and was not taken to jail. Such conversation was not shown to have been
brought to appellant's knowledge prior to the giving of the confession.

 Generally, determination of whether a confession was voluntarily given depends
upon an examination of the totality of the circumstances surrounding its acquisition. McCoy v.
State, 713 S.W.2d 940, (Tex. Crim. App. 1986), cert. denied, 480 U.S. 940 (1987); McCrory
v. State, 643 S.W.2d 725, 734 (Tex. Crim. App. 1982); Smith v. State, 742 S.W.2d 847, 851
(Tex. App--Austin 1987, no pet.). A confession must be free and voluntary and not obtained by
any sort of threats or violence, nor by any direct or implied promises, however slight, nor by the
exertion of any improper influence. Roberts v. State, 545 S.W.2d 157, 160-61 (Tex. Crim. App.
1977); Tovar v. State, 709 S.W.2d 26, 27 (Tex. App.--Corpus Christi 1986, no pet.); see also
Malloy v. Hogan, 378 U.S. 1 (1964). A promise will render a confession inadmissible if it is of
some benefit to the accused, is positive, is made or sanctioned by a person in authority, and is of
such a character as would likely influence the accused to speak untruthfully. Smith v. State, 779
S.W.2d 417, 427 (Tex. Crim. App. 1989).

 At a suppression hearing, the trial court is the sole trier of the facts, the judge of
the credibility of the witnesses and of the weight to be given their testimony. Fierro v. State, 706
S.W.2d 310, 316 (Tex. Crim. App. 1986); Rumbaugh v. State, 629 S.W.2d 747, 752 (Tex. Crim.
App. 1982). The trial court may choose to believe or disbelieve the testimony of any witness.
Tovar, 709 S.W.2d at 27. The trial court's ruling on a motion to suppress will not be disturbed
on appeal if it has support in the evidence. Fierro, 706 S.W.2d at 316; Green v. State, 615
S.W.2d 700, 707 (Tex. Crim. App. 1980), cert. denied, 454 U.S. 952 (1981).

 In Roberts, 545 S.W.2d at 161, the court wrote:


 A threat made by police officers to arrest or punish a close relative or a
promise to free a relative or prisoner in exchange for a confession may render the
prisoner's subsequently made confession inadmissible in evidence. People v.
Steger, 16 Cal.2d 539, 128 Cal.Rptr. 161, 546 P.2d 665 (1976). 80 A.L.R.2d
1428, 1438. However, where no express or implied promise or threat is made by
the police, a prisoner's belief that his cooperation will benefit a relative will not
render the prisoner's subsequent confession inadmissible in evidence. People v.
Steger, supra. See 80 A.L.R.2d 1428, 1438.


 Even when police have made a vague promise to see "what could be done"
about freeing a prisoner's friends, it did not render a confession made subsequently
inadmissible when the subject of leniency for the friends was introduced initially
by the prisoner and not the police. People v. Kendrick, 56 Cal.2d 71, 14 Cal.Rptr.
13, 363 P.2d 13 (1961).



 Evidence at a suppression hearing that the defendant was not threatened or coerced
while being questioned by a police officer supported a trial court's finding that the defendant's
confession was given voluntarily, despite the defendant's testimony that the police officer told him
that his mother was in jail and would remain there until he confessed. Fierro, 706 S.W.2d at 316. 
Further, a confession is not rendered inadmissible because a police officer tells an accused that
it would be best for him to make a statement or that "it would be better to get his business
straight." Dykes v. State, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983). An officer's threat to
file charges against a robbery defendant's wife did not render the defendant's confession
involuntary where the officer in fact had probable cause to arrest the wife for aiding in the
commission of the robbery. Allen v. McCotter, 804 F.2d 1362, 1364 (5th Cir. 1986), reh.
denied, 808 F.2d 1520 (5th Cir. 1987).

 The trial court's finding in the instant case that the confession was voluntarily given
is well supported by the evidence. Rumbaugh, 629 S.W.2d at 752; see also Fierro, 706 S.W. at
316. The confession was admissible. Appellant's points of error are overruled.

 The judgment is affirmed.


 John F. Onion, Jr., Justice


[Before Justices Powers, B. A. Smith and Onion*]

Affirmed

Filed: October 21, 1992

[Do Not Publish]




























* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   Miranda v. Arizona, 384 U.S. 436 (1966).