

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00089-CR

_____

ART EWING, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court Number 3
Tarrant County, Texas
Trial Court No. 1299989D

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Art Ewing, Jr., was indicted in Tarrant County, Texas,[1] on one count of theft of a motor vehicle valued between $20,000.00 and $100,000.00 and one count of unauthorized use of a motor vehicle, both charges arising from the same incident. A jury convicted Ewing on both counts and the trial court sentenced him to five years' confinement for theft and six months' confinement for unauthorized use of a motor vehicle.

On appeal, Ewing argues that his conviction was in error on the following grounds: (1) the evidence supporting the verdict was insufficient, (2) the trial court abused its discretion by admitting scientific global positioning system (GPS) evidence through a lay witness without the proper testimonial foundation, and (3) a statement made by Ewing regarding extraneous offenses should have been excluded as involuntary because the police officer who solicited the statement promised to reduce the number of charges Ewing faced in exchange for cooperation.[2]

We affirm the trial court's judgment because: (1) sufficient evidence supports the verdict, (2) the GPS testimony was not scientific evidence, and (3) the police officer's promise was unlikely to have influenced Ewing to confess to a crime he did not commit.

During the afternoon hours of Monday, October 8, 2012, Dorcus Schneiders, an administrative assistant at the First Baptist Church of Euless, Texas, encountered Ewing in a hallway of the church building. She was surprised to encounter someone in that part of the

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]Ewing raised no question as to any applicability of the issue of double jeopardy, either at trial or on appeal.

church building at that time. When questioned regarding his presence there, Ewing told Schneiders that he was supposed to meet someone there regarding electrical work to be performed on site. Schneiders had Ewing accompany her to the office of a church official, Kevin Davis.

Davis testified that since no electrical work was anticipated to be performed and he was unfamiliar with the company for whom Ewing claimed to be employed, he asked Ewing to wait outside the church building for the people that Ewing had said he was supposed to meet.

Apparently, Ewing did not follow those instructions because Schneiders observed Ewing again a short time later, this time being on the second floor of the church building, near the children's classrooms, in an area not then in use and in which all of the lights had been extinguished. Schneiders questioned his reason for being there and Ewing responded with the "same story about the contractor," whereupon she instructed him to leave and directed him to the exit door which led to the church parking lot. Although Schneiders saw Ewing enter the stairwell leading to the exit door, she did not see him actually leave the building.

Jason Gainer's landscaping company, Lawn Associates, had a crew working on the church grounds that day. Gainer received a call from one of the crew members working at the church property, informing him that the company's landscaping truck had been taken. Because the truck was equipped with a GPS locator device, Gainer was able to use applications on his computer and cellular telephone to locate and track the whereabouts of the truck. The GPS tracking system revealed to him that the truck was in motion, so he called the Euless Police Department to report the truck's theft. Because a loss of the equipment on the truck would create

more problems to the conduct of his business than the theft of the truck, Gainer's greater fear was that someone might leave the truck but take the lawn equipment in the truck before the police arrived. To expedite matters and to more quickly locate his property, Gainer drove off in his own truck to assist in the search.

Following the GPS tracking system on his cellular telephone, Gainer found that the missing truck had stopped in Arlington, Texas, in the parking lot of The Home Depot store at the intersection of Interstate Highway 20 and State Highway 157. Gainer alerted the police by telephone, providing them the address where the truck had stopped, and he then drove to that site himself, arriving on site only minutes after the truck had been parked. Gainer located the truck (still bearing his lawn equipment) in the parking lot, but no driver or passenger accompanied it. Arlington police officers arrived a few minutes later, removed the ignition key, exited the parking lot, and clandestinely watched the truck in the hope that someone would return to it.

True to police expectations, shortly thereafter, Ewing walked up to the truck, opened the door, and leaned inside it, this action prompting police officers (including Officer Donald Bartnicki) to close in and confront Ewing. Bartnicki drew his gun, identified himself as a police officer, and ordered Ewing to get on the ground. Ewing looked at Bartnicki and raised his hands, but then attempted to flee. Bartnicki testified that when Ewing looked over his shoulder at the officers chasing him, he (Ewing) ran headlong into a police car and fell to the ground. Despite policemen's orders to remain on the ground, Ewing tried to rise and struggled with the officers who placed him in custody. After having been subdued and placed under arrest, Ewing provided

the officers a false name and told them he was at The Home Depot to meet a friend and purchase a hot water heater.

Ewing was indicted on one count of theft of the truck belonging to Gainer having a value of $20,000.00 or more, but less than $100,000.00, and one count of unlawful use of a motor vehicle belonging to Gainer. After a jury trial, Ewing was found guilty of both counts, and the trial court assessed punishment at five years' imprisonment on the theft conviction and six months' confinement in state jail for unauthorized use of a motor vehicle, the sentences to run concurrently.

*Is There Sufficient Evidence that Ewing Possessed and Operated the Truck?*

In his first point of error, Ewing contends that there is factually insufficient evidence to support his convictions. In *Brooks v. State*, 323 S.W.3d 893, 894–95, 912–13 (Tex. Crim. App. 2010) (4–1–4 decision), a plurality of the Texas Court of Criminal Appeals abolished the factual sufficiency review it had previously announced in *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny. The *Jackson v. Virginia*, 443 U.S. 307 (1979), legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894–95, 912–13. Since Ewing has raised a challenge to the sufficiency of the evidence, we review his point of error for its legal sufficiency to sustain the conviction.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the

5

essential elements of the offense beyond a reasonable doubt. *Id.* at 912 (citing *Jackson*, 443 U.S. at 319); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

A person commits a third degree felony theft if he unlawfully appropriates property having a value of $20,000.00 or more but less than $100,000.00 with the intention to deprive the owner of that property. TEX. PENAL CODE ANN. § 31.03(a), (e)(5) (West Supp. 2013). A person commits the offense of unauthorized use of a motor vehicle if he "intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner." TEX. PENAL CODE ANN. § 31.07(a) (West 2011).

Here, Ewing makes a challenge to neither a finding regarding the value of the truck, nor to the lack of the owner's consent to take or use it; as a result, we do not address these issues.

6

Rather, Ewing contends that there is insufficient evidence that he appropriated and operated the truck. In other words, Ewing claims that there is not sufficient evidence to show beyond a reasonable doubt that he was the person who drove the truck from the church to The Home Depot parking lot.

While there is no direct evidence that Ewing drove or operated the truck, circumstantial evidence (which, taken alone, can be sufficient to establish the guilt of an actor) is as probative as direct evidence. *Hooper*, 214 S.W.3d at 13. Moreover, juries are permitted "to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Id*. at 15. A reviewing court determines if a jury's inferences are reasonable "based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id*. at 17. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and we defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

Here, Ewing argues that the evidence is insufficient to connect him to the operation and driving of the truck because there was no testimony from anyone who saw Ewing either enter or exit the truck, from anyone who actually observed him seated in the driver's seat of the truck, or from anyone who saw him operate or drive the truck. In support of his argument, Ewing relies on *Rollerson v. State*, where the defendant had been convicted at trial of theft and burglary. *Rollerson v. State*, 196 S.W.3d 810 (Tex. App.—Texarkana 2006, no pet.). On appeal, this Court found the evidence supporting Rollerson's convictions to be legally sufficient, but

7

factually insufficient, because no evidence was presented connecting Rollerson to the location of the theft or recent possession of the stolen property. *Id.* at 813.

Even if the factual sufficiency standard was still a viable test (which it is not), *Rollerson* is readily distinguishable from the present case. Here, two witnesses placed Ewing at the church site from which the truck was taken and Schneiders saw Ewing walking toward a church exit that led to the parking lot where the truck was then parked. There is also undisputed evidence that upon leaving The Home Depot, Ewing walked directly to the stolen truck, opened the truck's door, and leaned inside it before he was confronted by police. After the police approached him, Ewing fled and, when apprehended by them, gave a false name. "Flight is evidence of guilt." *Urtado v. State*, 605 S.W.2d 907, 915 (Tex. Crim. App. [Panel Op.] 1980). Viewing this evidence in the light most favorable to the verdict, we find that a jury could have reasonably inferred that Ewing took the truck from the church parking lot and drove it to The Home Depot parking lot. Therefore, we overrule this point of error.

*Was Gainer's GPS Testimony Admissible?*

In his second point of error, Ewing argues that the trial court abused its discretion by allowing Gainer to testify regarding the use of and information he gathered from a GPS locating device. Specifically, Ewing contends that this was scientific evidence that was not presented through an expert. Based upon that contention, Ewing maintains that the scientific evidence was permitted as evidence without first having been shown to be premised upon a reliable underlying scientific theory.

8

The issues of the admissibility of evidence and the qualifications of a witness to testify as an expert or as a lay witness are within the discretion of the trial court. *See* TEX. R. EVID 104(a); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Harnett v. State*, 38 S.W.3d 650, 657 (Tex. App.—Austin 2000, pet. ref'd). The trial court's decision will not be overturned on appeal absent a showing that the court abused its discretion. *See Harnett*, 38 S.W.3d at 657; *Ventroy v. State*, 917 S.W.2d 419, 422 (Tex. App.—San Antonio 1996, pet. ref'd). A trial court does not abuse its discretion so long as the decision to admit evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). So long as that decision falls within the zone of reasonable disagreement, an appellate court may not substitute its own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We now look at the ruling by the trial court in allowing the challenged evidence.

Ewing objected to Gainer's proffered testimony at trial as it related to Gainer's use of the GPS tracking device, resulting in a hearing held outside the presence of the jury. During the hearing, Gainer testified that each of his trucks is equipped with a GPS tracking device. This is a system Gainer has used for a couple of years, and it allows him to log into a computer program and check the whereabouts of any of his landscaping trucks. The program provides a screen display showing him the location of each of his trucks, with each truck marked individually on the map by an icon revealing the location of each truck with about a five-second delay in the reporting time. Gainer admitted ignorance of the scientific theory upon which the GPS tracking devices rely.

The State argued that Gainer was a lay witness merely testifying about his factual observations and that Gainer did not purport to be (and was not) an expert providing an opinion. The State claimed it only offered the GPS testimony to show how Gainer was able to determine the location of the vehicle in the first place and how he and the police officers knew to go to The Home Depot. Ewing contended that Gainer's testimony was "scientific testimony" that required foundational evidence regarding the system's underlying scientific theory, techniques, application, and overall reliability. Ewing attempted to equate the use of the GPS tracking devices to that of a breathalyzer used to determine the blood-alcohol level of a person suspected of driving under the influence of alcohol. The State's response to that argument was that the testimony regarding the use of the GPS did not go to the "ultimate issue[] to be decided by the jury," thereby distinguishing the GPS evidence as used here from that of a breathalyzer. The trial court overruled Ewing's objection, and Gainer was allowed to testify before the jury regarding his use of the GPS tracking device.

Gainer's GPS testimony was not scientific evidence. Here, the testimony did not provide any of Gainer's opinion (either lay or expert). The testimony he provided did not require special training or experience, nor did it decide the ultimate issue before the jury (if the truck was taken without authorization and, if so, by whom), thereby further differentiating this evidence from DNA tests, breathalyzer results, or fingerprints. In other words, it did nothing to establish who the actor was or whether the person acted without permission; it was used solely to establish the location of the purloined truck. As alluded to by the trial court, if Gainer's telephone alerted him that his home security alarm was tripped, no scientific foundation or expert qualification would

10

be necessary in order for Gainer to testify about the alert because it would have no bearing on the identity of any person found near the home. To hold that it would be necessary for an expert to testify about how a GPS device operates before testimony of this nature could be given would be similar to requiring an opthamologist to testify regarding mechanics of the operation of the eye before an eye witness would be allowed to testify.

Here, the GPS testimony pertained to only a circumstantial fact (i.e., the means by which Gainer learned of the truck's location) and not to the ultimate question of whether the truck had been stolen or as to the identity of the thief. Therefore, no expert testimony or scientific foundation was necessary. We find the trial court was within its discretion to admit Gainer's GPS testimony, and we overrule this point of error.

*Was Ewing's Statement Voluntary?*

In his final point of error, Ewing contends that the trial court erred during the punishment phase of the trial by admitting into evidence a video-recorded interview conducted at some time before the theft of the truck wherein Ewing admitted to having committed several unrelated thefts and attempted thefts. Specifically, Ewing argues that the promises given to him by the interviewer induced him to make the statements he uttered during the interview, thereby making them involuntarily given.

We apply a bifurcated standard of review to a trial court's denial of a motion to suppress, giving great deference to the trial court's determination of historical facts and reviewing de novo the trial court's application of the law. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). When a motion to suppress a statement is based on a claim that the statement was

11

involuntary, we give almost total deference to the trial court's determination of historical facts, especially when the trial court's fact-findings are based on an evaluation of the credibility and demeanor of a witness. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1977); *Villarreal v. State*, 61 S.W.3d 673, 678 (Tex. App.—Corpus Christi 2001, pet. ref'd). We review de novo mixed questions of law and fact that do not turn on the credibility and demeanor of a witness. *Ross*, 32 S.W.3d at 856 (citing *Guzman*, 955 S.W.2d at 89).

When the trial court makes no explicit findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court's implicit findings of fact support its ruling, so long as those facts are supported by the record. *Id.* at 855 (citing *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000)). If the trial court's decision is correct on any theory of law applicable to the case, the decision will be sustained. *Id.* at 856 (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)); *Villarreal*, 61 S.W.3d at 678.

The Fourteenth Amendment to the United States Constitution prohibits the admission of any confession obtained in a manner considered involuntary as a matter of due process. *See* U.S. CONST. amend. XIV; *Jackson v. Denno*, 378 U.S. 368, 376 (1964); *Tovar v. State*, 709 S.W.2d 25, 27 (Tex. App.—Corpus Christi 1986, no pet.). At a hearing to determine the admissibility of a confession, the burden of proof is on the State to show by a preponderance of the evidence that the statement was given voluntarily. *Colorado v. Connelly*, 479 U.S. 157, 169 (1986) (citing *Lego v. Twomey*, 404 U.S. 477 (1972)).

12

Under the federal standard for voluntariness, the confession is analyzed to determine whether a statement given to police was given voluntarily, or likely given as a result of coercive police activity. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973); *Martinez v. State*, 127 S.W.3d 792, 795 (Tex. Crim. App. 2004); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (providing statement is involuntary "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker").

The Texas Court of Criminal Appeals has prescribed that a four-prong test be applied to determine whether a confession obtained by a promise of a benefit is involuntary. *Sossaman v. State*, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991); *see also Fisher v. State*, 379 S.W.2d 900, 902 (Tex. Crim. App. 1964). The promise must be (1) of some benefit to the defendant, (2) positive, (3) made or sanctioned by a person in authority, and (4) of such character as would be likely to influence the defendant to speak untruthfully. *Henderson v. State*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997); *see also Sossaman*, 816 S.W.2d at 345; *Fisher*, 379 S.W.2d at 902. The first three elements are satisfied when someone with apparent authority makes a concrete promise of a benefit to a person. *Sossamon*, 816 S.W.2d at 345; *Henderson*, 962, S.W.2d at 564. To determine if the alleged promise of a benefit was likely to influence a person to make false statements, an appellate court considers whether the circumstances of the promise made the defendant "'inclined to admit a crime he didn't commit.'" *Sossamon*, 816 S.W.2d at 345 (quoting *Fisher*, 379 S.W.2d at 902). Further, simple statements of fact regarding how a

confession can sometimes result in leniency do not render a confession involuntary. *See Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993).

About a month before the landscaping truck was stolen, Ewing was arrested in relation to several gasoline thefts in the Grapevine, Texas, area. After Ewing was arrested, Detective Brian Guillian of the Grapevine Police Department interviewed Ewing about several gasoline thefts (totally unrelated to the truck theft, which had yet to take place) which had occurred. Ewing initially refused to participate in the interview, but Guillian spoke with Ewing's girlfriend, Sabrina Ward, and told her if Ewing would cooperate with police, then Guillian would only charge him with two theft offenses rather than the six possible charges he could otherwise face. Subsequently, Ewing consented to a video-recorded interview; Guillian read him his *Miranda*[3] warning, and Ewing waived those rights.

During the interview, Ewing admitted to several extraneous bad acts, particularly several thefts of gasoline in and around Grapevine, Texas. His methodology was to drill a hole into a vehicle's fuel tank, drain some of the gasoline, and then use something to plug the hole. Ewing did not make a blanket confession, denying any knowledge of several of the specific instances of gasoline theft about which he was questioned, but was certain about others.[4] The State proffered the video-recorded interview as evidence during the punishment phase of the trial. After a hearing to suppress the introduction of the interview, during which both Guillian and Ewing testified, the trial court admitted it into evidence.

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[4]Exraneous-offense evidence can be considered by a jury in determining the defendant's punishment, even though the State cannot prove all the elements of the extraneous offense. *Spence v. State*, 795 S.W.2d 743, 759 (Tex. Crim. App. 1990) (per curiam).

14

Here, the facts satisfy the first three elements of the *Sossamon* test because the offer was definite and unequivocal, Guillian (who made the offer) was clearly a person in authority, and he promised something that would benefit Ewing (that promise being that if Ewing cooperated with the Grapevine police, Guillian would charge him with only two theft offenses rather than the six possible charges). *See Sossamon*, 816 S.W.2d at 345; *Henderson v. State*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997). It is important to note that Ewing did not confess to most of the gasoline thefts about which Guillian questioned him, but only a few. This would indicate that Ewing was not simply agreeing to confess to whatever charges Guillian mentioned to him but, rather, was being truthful. Considering these circumstances, we find that the trial court's implicit ruling that the promise made by Guillian was unlikely to have induced Ewing to admit to committing wrongdoings of which he was innocent was a reasonable ruling; accordingly, the ruling did not constitute a breach of discretion. We overrule this point of error

We affirm the trial court's judgment.


                                        Bailey C. Moseley
                                        Justice


Date Submitted:      October 1, 2013
Date Decided:        November 5, 2013

Do Not Publish

15